*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| LAURA AUBERT, Personal Representative of the Estate of DAVID L. AUBERT,<br><br>               Appellant,<br><br>v.<br><br>DEBRA J. WILSON, f/k/a DEBRA J. AUBERT,<br><br>               Appellee. | Supreme Court No. S-17573<br><br>Superior Court No. 3PA-17-01915 CI<br><br>O P I N I O N<br><br>No. 7510 – March 26, 2021 |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Jonathan A. Woodman, Judge.

Appearances: Kenneth J. Goldman, Law Offices of Kenneth J. Goldman, P.C., Palmer, for Appellant. Debra J. Wilson, pro se, Nevada, Missouri, Appellee.

Before: Bolger, Chief Justice, Winfree, Maassen, Carney, and Borghesan, Justices.

BORGHESAN, Justice.

## I.    INTRODUCTION

This appeal concerns the equitable division of property in divorce. After filing for divorce from her husband, the wife moved to bifurcate proceedings so the parties could be immediately divorced, with their property to be divided later after trial.

The superior court granted the motion and issued the divorce decree in the wife's favor. Shortly after the divorce decree, but before the property division trial, the husband died and his estate was substituted as a party. After trial, the superior court divided the marital property 90% to 10% in favor of the wife.

The husband's estate appeals, arguing that the court improperly classified, valued, and allocated various property. In particular, the estate challenges the unequal allocation of the marital property. We hold that, as a general matter, the superior court did not abuse its discretion in awarding a disproportionate share of the marital property to the wife in light of her greater needs. But because the superior court erred in classifying several items, we reverse or vacate some of its rulings and remand for further proceedings consistent with this opinion.

## II.    FACTS AND PROCEEDINGS

### A.    Facts And Initial Proceedings

Debra Wilson and David Aubert married in September 2007. They separated ten years later, in June 2017. They had no children together, but each has adult children from prior marriages. Debra filed for divorce in July 2017. At Debra's request, the court bifurcated the divorce from the property division. In July 2018 the court entered a decree of divorce and ordered that property and debt distribution would be determined at a later trial. A month after the divorce decree — but several months before the property division trial — David died. The personal representative of his estate, his daughter Laura Aubert, substituted as a party.

### B. Trial

After a two-day marital property division trial in February 2019, the superior court issued its judgment and findings of fact and conclusions of law.[1] Observing that David had died after divorce but before trial, the court found, based on these "factual circumstances" and "the parties' relative earning capabilities [and] future economic need," that an "unequal distribution is equitable." The court also found that David's children "attempted to hide and sell marital assets." The court attached a property distribution spreadsheet indicating the findings for each item of property and an account of the overall allocation.

The rulings challenged on appeal pertain to the following subjects: real property in Missouri; a pleasure boat; two vehicles; a credit card account; mechanic's tools; the parties' marital home in Wasilla; and the overall allocation of the marital property.

#### 1. Missouri real property

The estate challenges the superior court's classification of real property in Missouri and its associated debt. Debra's father testified that he gave her the Missouri property as a pre-inheritance gift. Debra entered the quitclaim deed into evidence, and the deed is solely in her name. The parties agreed that $3,000 in marital funds had been

---

[1] If a spouse dies after the divorce decree is rendered, "the divorce action continues even if issues other than the divorce itself remain to be resolved. Thus, where the court has bifurcated the proceedings and formally entered a divorce decree, the subsequent death of one or both parties will not result in abatement. The case continues, with the decedent's personal representative substituted as a party." 1 BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 3:3, at 110-12 (4th ed. 2019). "When a divorce action survives the death of a spouse, the only property distributed under the law of wills or intestacy is property awarded to the decedent spouse in the divorce action. Thus, the divorce action must be completed before the probate court distributes property to the decedent's heirs." *Id.* at 112.

used to pay down a loan on the property.  The court classified the property as Debra's separate property but classified the debt on the property as marital.

### 2. Boat

The estate challenges the superior court's classification of a Bayliner boat. David had received the boat as part of the property settlement in a previous divorce. Debra testified that they used the boat "as a family."  She indicated that she and David had purchased a new top for the boat that cost $1,200.  She also stated that the family "fished every summer up until . . . 2016."  David's daughter Carolynn testified that the boat had not been used since 2016 due to her father's declining health and the need for repairs.  The court classified the boat as "[p]remarital property transmuted to marital."

### 3. Vehicles

The estate challenges the superior court's classification of two vehicles — a 2007 GMC Sierra truck and a 2008 Chevy Impala sedan.  David's initial property and debt worksheet listed the truck as marital property.  At trial David's daughter Carolynn testified that after Debra left the home, David could no longer afford the truck payments, so Carolynn loaned him $6,150 to pay off the loan.  This transaction occurred just four days after Debra and David separated.  Carolynn acknowledged that "[Debra's] name and [David's] name were both on the truck" but testified that she replaced Debra's name on the title with her own name.  David sold the Chevy Impala to Carolynn for $2,800 after the separation but before the divorce.  The Kelley Blue Book value was $3,079. Debra testified that she believed these actions constituted waste, as Carolynn obtained the vehicles from her father for below market values and thereafter removed Debra's name from the title. The court found that the vehicles were marital property and awarded both to Debra.

### 4. Credit card debt

The estate challenges the superior court's classification of debt on the couple's joint credit card. The total balance on the account at the time of trial was $4,246. Prior to trial, Debra requested that the total debt go to David because the money was spent on his daughter Carolynn's dog. The estate responded that only $1,800 was for the dog and that Carolynn had gifted David and Debra the dog before the dog got sick.

At trial Carolynn testified that she gave the dog to David and Debra. Carolynn also testified that when she put the payment on the card, the veterinarian called Debra — not David — to confirm whether Carolynn was authorized to use that credit card and sign the bill. The court classified $2,426 of the total account balance as marital debt, indicating that the remaining amount (around $1,800) was David's separate debt.

### 5. Tools

The estate challenges the superior court's valuation of mechanic's tools. Evidence was presented addressing the tools' ownership and value. A property division agreement from David's previous divorce stated that he was awarded "[a]ll of his mechanical tools," indicating that some of his tools were premarital assets. David and Debra's federal tax returns, which were introduced as exhibits, provide information on the amount they spent on tools in various years — $13,905 in 2008, $20,113 in 2009, $3,100 in 2010, and $2,400 in 2012. David executed a will in 2017 in which he valued the tools "at approximately [$]100,000.00."

A number of witnesses testified to the value of the tools. An appraiser hired by the estate who had valued the tools indicated that he believed they were worth between $13,340 and $14,340. Debra questioned Laura and Carolynn about whether they had hidden any tools from the appraiser, but they denied doing so.

Carolynn testified that David would brag about the tools being worth $100,000, but she said he sometimes exaggerated. Debra's son, a mechanic who worked with David, testified that he thought the tools were worth $90,000 to $100,000. One of Debra's co-workers, who had David fix his car, testified that David "bought the best [tools] he could get" and that the tools were "worth $100,000 to [David]." David's friend of 20 years, who "hauled [David's] tools for him," testified that "[David] had a lot of tools," many acquired after his marriage to Debra. He stated that "a lot of the tools are valuable, but they depreciate . . . as the years go by." The court, relying on testimony about the high value of the tools, valued the tools at $70,000.

### 6. Wasilla house

The estate challenges the superior court's classification of the equity in and debt on the couple's home in Wasilla. The parties agreed the property was a marital asset and the associated debt was marital debt. The court stated that the Wasilla "[h]ome [was] to be sold [and] [e]xcess profits split evenly." It valued the home at $260,000 and specified that each party would receive $130,000. The court allocated the entire value of the debt on the Wasilla property — $169,457 — to the estate.

### 7. Equitable division of the marital property

The estate challenges the superior court's unequal division of the marital property in favor of Debra. The court's form order does not specify the respective percentage for each party, but the attached spreadsheet indicates the overall allocation. The court allocated specific items of property and debt to the parties so that 89% of the net value went to Debra. The court then ordered the estate to make an equalization payment to Debra so that the final division would be 90% in Debra's favor.

### C. Motion For Reconsideration

The estate filed a motion for reconsideration, raising many of the arguments it now raises before us on appeal. In particular, the estate argued that the superior court

had erred in its treatment of the marital home and should have either (1) calculated the equity in the home and split it evenly between the parties or (2) awarded both the home and the mortgage to the estate. In response, the court corrected "scrivener's errors on the property distribution table" but did not make the other changes requested by the estate. With respect to the marital home, the court stated that "[t]he parties agreed that [the estate] would assume the mortgage" and that it had merely "adopted the parties' agreements before making the contested property valuation and distribution determinations." The court declined to address any of the estate's other arguments.

The estate appeals.

## III. STANDARD OF REVIEW

"Alaska follows the law of equitable distribution, which is a set of rules for dividing property upon divorce."[2] "Division of marital property involves three steps: '(1) deciding what specific property is available for distribution, (2) finding the value of the property, and (3) dividing the property equitably.' "[3] "The first step — characterizing property as either marital or separate — 'may involve both legal and factual questions.' "[4] "Underlying factual findings as to the parties' intent, actions, and contributions to the marital estate are factual questions."[5] "We review factual findings for clear error, which exists 'only when we are left with a definite and firm conviction

---

[2]     *Kessler v. Kessler*, 411 P.3d 616, 618 (Alaska 2018).

[3]     *Thompson v. Thompson*, 454 P.3d 981, 988 (Alaska 2019) (quoting *Engstrom v. Engstrom*, 350 P.3d 766, 769 (Alaska 2015)).

[4]     *Pasley v. Pasley*, 442 P.3d 738, 744 (Alaska 2019) (quoting *Beals v. Beals*, 303 P.3d 453, 459 (Alaska 2013)).

[5]     *Grove v. Grove*, 400 P.3d 109, 112 (Alaska 2017) (quoting *Beals*, 303 P.3d at 459).

based on the entire record that a mistake has been made.' "[6]  "[W]hether the trial court applied the correct legal rule . . . is a question of law that we review de novo using our independent judgment."[7]  "The second step, the valuation of property, is a factual determination that we review for clear error."[8]  " 'We review the trial court's third step, the equitable allocation of property, for an abuse of discretion' and 'will reverse only if the division [was] clearly unjust.' "[9]

## IV.   DISCUSSION

### A.    There Were A Number Of Errors In Property Classification.

To begin the process of equitable division, the superior court must "first distinguish[] between separate property and marital property.  As a general rule (subject to various exceptions), property is separate property if it was acquired by a spouse before the marriage and property is marital property if it was acquired by a spouse during the marriage."[10]  The classification of property "is important because only marital property is subject to division upon divorce."[11]

---

[6]      *Pasley*, 442 P.3d at 744 (quoting *Hockema v. Hockema*, 403 P.3d 1080, 1088 (Alaska 2017)).

[7]      *Grove*, 400 P.3d at 112 (alteration in original) (quoting *Beals*, 303 P.3d at 459).

[8]      *Pasley*, 442 P.3d at 744 (quoting *Hockema*, 403 P.3d at 1088).

[9]      *Thompson v. Thompson*, 454 P.3d 981, 989 (Alaska 2019) (alteration in original) (quoting *Engstrom v. Engstrom*, 350 P.3d 766, 769 (Alaska 2015)).

[10]      *Kessler v. Kessler*, 411 P.3d 616, 618 (Alaska 2018) (footnote omitted).

[11]      *Id.*

**1.    It was error to classify the Missouri property as completely separate and the associated debt as marital.**

The superior court granted the Missouri property to Debra as a non-marital inheritance, yet it classified the debt on the property as marital.  The estate argues that, in so doing, the court gave Debra a windfall.

The evidence supports the superior court's finding that the Missouri property is Debra's separate property.  Property acquired by inheritance and property acquired by gift are both separate property.[12]  Debra's father testified at trial that he gave her the Missouri property as a pre-inheritance gift, and the quitclaim deed is in her name only.  The property at issue here is therefore non-marital property.

But the superior court erred in classifying the property's entire value as marital.  When Debra received the property, she paid $3,000 towards its associated debt with money from a joint marital account.  We have recognized that "in most equitable distribution states the use of marital funds to pay down the mortgage on separate property creates a marital interest in that property."[13]  At the time, we "[did] not decide . . . whether to adopt this approach."[14]  But we do so now.

As explained in a leading treatise on property division, "contributions toward reducing the principal balance of the debt are . . . contributions to acquisition of the property, just like funds used to make the down payment."[15]  When a married couple makes a down payment using both marital and separate funds and the property's value

---

[12]    *Schmitz v. Schmitz*, 88 P.3d 1116, 1127 (Alaska 2004).

[13]    *Kessler*, 411 P.3d at 622.

[14]    *Id.* at n.33.

[15]    1 BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 5:26, at 600 (4th ed. 2019).

remains constant, "the marital and separate interests [at divorce] are exactly the same as the marital and separate funds contributed to the purchase price."[16] Similarly, the marital funds used to reduce the principal debt on the Missouri property created a marital interest in the property that is subject to equitable division in divorce. If the value of the property was still the same at divorce as when Debra paid down the mortgage with $3,000 in marital funds, the value of the marital interest at divorce would be $3,000.[17]

But the value of property rarely stays the same over time, and the treatise addresses what courts should do when property appreciates or depreciates.[18] When the change in property value results from "inflation, market forces, or other factors outside the control of the parties," the appreciation or depreciation is considered passive.[19] "Since the marital and separate interests attach to the entirety of the asset and not to specific parts, each interest appreciates or depreciates passively in the same percentage as the entire asset."[20] Evidence indicated the Missouri property decreased in value by over $3,000 between 2011, when Debra received the property from her parents, and the date of trial. We therefore remand to the superior court to determine how this depreciation affects the marital interest in the property.[21]

---

[16]    *Id.* § 5:24, at 577.

[17]    Because this payment went to principal only, we need not decide whether payments of interest count towards a marital interest in separate property. *Cf. id.* § 5:26, at 604-05 ("Payments of interest, as distinct from payments of principal, are generally not treated as contributions to the acquisition of property.").

[18]    *Id.* at 578-81.

[19]    *Id.* at 578.

[20]    *Id.*

[21]    Professor Turner identifies a number of different allocation formulas, *id.*
(continued...)

There remains the issue of the debt on the Missouri property. Despite classifying the property as Debra's separate property, the superior court classified the debt on the property as marital without explanation. The same standards for whether property is marital or separate apply to debt,[22] and without specific findings it is not clear why the superior court classified the asset and the debt differently. We therefore remand this issue to the superior court to make the relevant findings.

### 2. It was clear error to find the boat had been transmuted from premarital to marital property.

It was clear error for the superior court to find that the Bayliner boat, which it found to be David's premarital property, was later transmuted into marital property. The evidence at trial was not enough to show that David intended the boat to become an asset of the marriage.

"Transmutation 'occurs when one spouse intends to donate separate property to the marital estate and engages in conduct demonstrating that intent.' "[23] "The

---

[21]    (...continued)
§ 5:24, at 577-85, all of which "convert marital and separate *contributions* into the resulting final marital and separate *interests*," *id.* § 5:26, at 597 (emphases in original). It is within the superior court's discretion to choose which formula to apply. *Id.* § 5:23, at 573.

[22]    *See Richter v. Richter*, 330 P.3d 934, 938-39 (Alaska 2014) ("Debt incurred during marriage is presumptively marital; the party claiming otherwise must show that the parties intended it to be separate. . . . 'Whether an initially nonmarital debt transmutes into a marital liability is a question of intent and acceptance.' " (quoting *Ginn-Williams v. Williams*, 143 P.3d 949, 956 (Alaska 2006), *superseded in part on other grounds by statute*, Gulf Opportunity Zone Act of 2005, Pub. L. No. 109-135 § 404(a), 119 Stat. 2577, 2633-34 (codified as amended at 26 U.S.C. § 152(e)), as recognized in *Wagner v. Wagner*, 386 P.3d 1249, 1252 n.13 (Alaska 2017))).

[23]    *Pasley v. Pasley*, 442 P.3d 738, 750 (Alaska 2019) (quoting *Kessler v.*
(continued...)

-11-                                                                          **7510**

burden of proving an implied gift lies upon the party who claims one."[24] "Whether a spouse intended to donate his or her separate property to the marital estate is a factual finding that we review for clear error."[25]

Evidence that David intended to donate the boat to the marriage is scant. The only evidence relevant to transmutation was Debra's testimony at trial that they used the boat as a family and that she and David had spent $1,200 on a new top for the boat. As we explained in *Kessler v. Kessler*, the "assum[ption] that a spouse intends to treat separate property as 'marital' when he or she shares that property *during the marriage*" is "incorrect."[26] The key question is whether the owning spouse intended the separate property "to be treated as marital property *for the purpose of dividing property in the event of a divorce*."[27] Accordingly we held in *Kessler* that evidence that a couple lived together in a condominium and jointly contributed to its upkeep was insufficient to show

---

[23] (...continued)
*Kessler*, 411 P.3d 618, 619 (Alaska 2018)). In *Cox v. Cox* we identified four "relevant factors" in this determination: " '(1) the use of the property as the parties' personal residence, . . . (2) the ongoing maintenance and managing of the property by both parties,' . . . (3) placing the title of the property in joint ownership[,] and (4) using the credit of the non-titled owner to improve the property." 882 P.2d 909, 916 (Alaska 1994) (citation omitted) (quoting *McDaniel v. McDaniel*, 829 P.2d 303, 306 (Alaska 1992)). We recently clarified that these factors "are relevant but not dispositive," *Pasley*, 442 P.3d at 750, and "the presence or absence of . . . any . . . *Cox* factor[s] is not a proxy for the ultimate question: did the owning spouse intend to donate his or her separate property to the marital estate?" *Kessler*, 411 P.3d at 620.

[24] *Pasley*, 442 P.3d at 750 (quoting 1 BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 5:69, at 665 (3d ed. Nov. 2017 update)).

[25] *Kessler*, 411 P.3d at 621.

[26] *Id.* at 619 (emphasis in original).

[27] *Id.* (emphasis in original).

donative intent.[28]  Similarly, the fact that both Debra and David used the boat and contributed to a new top is insufficient to show donative intent.  Thus it was clear error to find that David intended the boat to become marital property.

That is not the end of the analysis.  If the use of marital funds to purchase a new top for the boat caused the boat's value to appreciate, that appreciation may be classified as a marital asset under the doctrine of active appreciation.[29]  "Active appreciation occurs when marital funds or marital efforts cause a spouse's separate property to increase in value during the marriage."[30]  "For this doctrine to apply, there must be (1) appreciation of separate property during marriage; (2) marital contributions to the property; and (3) a causal connection between the marital contributions and at least some part of the appreciation."[31]  "The spouse seeking to classify the appreciation as active has the burden of proving the first two elements — an increase in value and marital contribution — while the burden of showing the absence of a causal link lies with the owning spouse."[32]

The active appreciation doctrine would apply if Debra could show that the boat's value increased after the couple purchased the new top.  The burden would then fall on the estate to show that there was no causal connection between the top and the appreciation in the boat's value.  The record does not provide any information on the

---

[28]    *Id.* at 621-22.

[29]    *See generally* 1 BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY §§ 5:54-57, at 832-921 (4d ed. 2019).

[30]    *Odom v. Odom*, 141 P.3d 324, 333 (Alaska 2006) (quoting *Harrower v. Harrower*, 71 P.3d 854, 857 (Alaska 2003)).

[31]    *Id.* at 334.

[32]    *Hanson v. Hanson*, 125 P.3d 299, 304 (Alaska 2005) (footnote omitted).

effect of the new top on the boat's value. The superior court should make appropriate factual findings on remand.

### 3. It was error to recapture the vehicles without making specific factual findings of waste or dissipation.

The superior court classified the GMC Sierra and the Chevy Impala as marital assets and awarded them to Debra even though Carolynn had title to these vehicles by the time of trial. In doing so, the superior court effectively "recapture[d]" the assets.[33] But a court may not recapture assets without specific findings that the assets in question were "wasted, dissipated, or converted to non-marital form."[34] Because the court did not make these specific findings, its classification of the vehicles as marital was error.

"[T]he question of wasted marital assets arises when a marital asset is lost or diminished after separation but before the time of trial."[35] "The party that controls a marital asset during separation may have to compensate the other party if he or she dissipates or wastes the asset and converts it to non-marital form."[36] But a "marital asset is not considered to have been dissipated, wasted, or converted if it was expended 'for marital purposes or normal living expenses.' "[37] The spouse who asserts dissipation must first prove two things: (1) that the asset existed and (2) that the asset "was lost during

---

[33]     *Jerry B. v. Sally B.*, 377 P.3d 916, 924 (Alaska 2016).

[34]     *Id.* (quoting *Day v. Williams*, 285 P.3d 256, 260 (Alaska 2012)).

[35]     *Jones v. Jones*, 942 P.2d 1133, 1139 (Alaska 1997).

[36]     *Ethelbah v. Walker*, 225 P.3d 1082, 1090 (Alaska 2009).

[37]     *Id.* (quoting *Jones*, 942 P.2d at 1139).

or after the marital breakdown."[38]  If the spouse asserting dissipation proves these things, "the burden shifts to the [other] spouse to show that he or she did not dissipate the asset."[39]  If the court finds the asset was dissipated, wasted, or converted to non-marital form, it may "recapture" the asset.[40]  In so doing, the court must produce an order of recapture with "specific findings, based on evidence, that 'the assets in question were actually wasted, dissipated, or converted to non-marital form.' "[41]  "A superior court errs when it recaptures property without making specific findings of fact as to waste or dissipation."[42]

Some evidence produced at trial might support an order to recapture the vehicles.  Debra produced evidence that (1) both vehicles existed and (2) she lost title to both vehicles after separation.  After the separation, David sold the car to his daughter Carolynn.  And Carolynn gave David a loan to help pay off the truck; as security they replaced Debra's name on the title with Carolynn's name.

However, the superior court did not produce an order of recapture including factual findings that the vehicles were actually converted to non-marital form.  In the court's general findings of fact and conclusions of law, it made a finding that "[David's] children (the beneficiaries of his estate) attempted to hide and sell marital assets prior."  The court did not specify which particular assets were hidden and sold.  In the attached

---

[38]     *Id.*

[39]     *Id.*

[40]     *Jones*, 942 P.2d at 1139 (quoting *Foster v. Foster*, 883 P.2d 397, 400 (Alaska 1994)).

[41]     *Jerry B. v. Sally B.*, 377 P.3d 916, 924 (Alaska 2016) (quoting *Day v. Williams*, 285 P.3d 256, 260 (Alaska 2012)).

[42]     *Day*, 285 P.3d at 260.

property and debt worksheet, the court also merely characterized both vehicles as marital and allocated both vehicles to Debra without any specific findings that the vehicles "were actually wasted, dissipated, or converted to non-marital form."[43] Nor did the court address whether Carolynn's loan for the truck was "for marital purposes or normal living expenses,"[44] despite her trial testimony that she gave David a loan because he otherwise could not afford to pay off the debt on the Sierra after the separation.

On remand, the superior court should make specific factual findings regarding whether these assets were converted to non-marital form and, if so, whether it is recapturing them. In making findings regarding the truck, the court should consider the trial testimony that Carolynn added her name to the title only after giving David a loan because he could not otherwise afford the truck payments. If the court credits this testimony, it should also consider whether the loan was for an amount substantially less than the value of the truck.

### 4. It was clear error to classify some of the credit card debt as separate property.

It was clear error for the superior court to classify only a portion of the debt on the credit card account as marital. The total balance on the account was $4,246. On the property distribution spreadsheet, the court indicated that it reduced the amount of debt by $1,800 as the amount paid for treatment for a pet dog. Yet the evidence does not support a finding that this expense was non-marital.

Debts acquired during marriage are presumptively marital.[45] "Absent any showing that the parties intended a debt to be separate, the trial court must presume that

---

[43]  *See Jerry B.*, 377 P.3d at 924 (quoting *Day*, 285 P.3d at 260).

[44]  *See Ethelbah*, 225 P.3d at 1090 (quoting *Jones*, 942 P.2d at 1139).

[45]  *Veselsky v. Veselsky*, 113 P.3d 629, 636 (Alaska 2005).

a debt incurred during the marriage is marital and should consider it when dividing the marital estate."[46] The debt for the dog was incurred during marriage. Further, Carolynn testified that she gave the dog to David and Debra as a gift. Carolynn also testified that the veterinarian had called Debra to check and make sure whether Carolynn could sign the credit card bill to pay for the dog's veterinary treatment. Even if the court discredited this testimony, Debra did not provide any "trial evidence showing that the parties intended the debt to be separate."[47] Accordingly Debra did not overcome the presumption that the entire debt on the account is marital, and it was clear error to hold otherwise.

**B.     The Superior Court Did Not Clearly Err In Valuing The Tools.**

The second step in property division is "finding the value of the property."[48] The parties' property included a collection of mechanic's tools to which the parties assigned greatly divergent values.[49] The court valued the tools at $70,000, finding that "[David's] children hid some tools from the appraiser [and] [David's] friends testified credibly about [the] high value of [the] tools." The estate argues that the court improperly valued the tools at $70,000, asserting that "[n]o evidence was presented as to this valuation." We disagree.

The superior court's valuation is well within the range supported by the evidence. The court was faced with conflicting evidence suggesting a value for the tools

---

[46]     *Coffland v. Coffland*, 4 P.3d 317, 321-22 (Alaska 2000).

[47]     *See Veselsky*, 113 P.3d at 636.

[48]     *Thompson v. Thompson*, 454 P.3d 981, 988 (Alaska 2019) (quoting *Engstrom v. Engstrom*, 350 P.3d 766, 769 (Alaska 2015)).

[49]     The estate does not appeal the determination that the tools were marital property.

somewhere between $13,340 and $100,000. This evidence included testimony by an expert appraiser hired by the estate; tax returns showing write-offs for tool purchases; David's will; the testimony of Debra's son (a mechanic who worked with David); and the testimony of David's friends. The superior court found based on the testimony at trial that the daughters hid tools from the appraiser. This finding suggests a value above the low end of the range. Additionally, the court found that "[David's] friends testified credibly about [the] high value of [the] tools." "We give deference to the superior court's credibility assessments, especially when such assessments are based on oral testimony."[50] Because the value chosen by the superior court was within the range of reasonable values based on the evidence and rested on credibility assessments, the valuation was not clear error.

### C. It Was Not An Abuse of Discretion To Divide The Property Unequally In Favor Of The Surviving Spouse, But The Superior Court May Have Relied On An Improper Factor.

The third step in property division is "dividing the property equitably."[51] We review the equitable allocation of property for an abuse of discretion and "will reverse only if the division [was] clearly unjust."[52]

---

[50] *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 310 P.3d 943, 949 (Alaska 2013).

[51] *Thompson*, 454 P.3d at 988 (quoting *Engstrom*, 350 P.3d at 769).

[52] *Id.* at 989 (alteration in original) (quoting *Engstrom*, 350 P.3d at 769).

**1.      The superior court did not abuse its discretion in awarding a disproportionately high share of the marital estate to Debra in light of David's death.**

Alaska Statute 25.24.160(a)(4) "requires property division to be made 'in a just manner and without regard to which of the parties is in fault.' "[53] The superior court must consider the following statutory factors, commonly known as the "*Merrill* factors":

(A) the length of marriage and station in life of the parties during the marriage;

(B) the age and health of the parties;

(C) the earning capacity of the parties, including their educational backgrounds, training, employment skills, work experiences, length of absence from the job market, and custodial responsibilities for children during the marriage;

(D) the financial condition of the parties, including the availability and cost of health insurance;

(E) the conduct of the parties, including whether there has been unreasonable depletion of marital assets;

(F) the desirability of awarding the family home, or the right to live in it for a reasonable period of time, to the party who has primary physical custody of children;

(G) the circumstances and necessities of each party;

(H) the time and manner of acquisition of the property in question; and

(I) the income-producing capacity of the property and the value of the property at the time of division[.][54]

---

[53]      *Hockema v. Hockema*, 403 P.3d 1080, 1088 (Alaska 2017) (quoting AS 25.24.160(a)(4)).

[54]      AS 25.24.160(a)(4); *see also Merrill v. Merrill*, 368 P.2d 546, 547-48 n.4

(continued...)

"The trial court has broad latitude in dividing marital property[.]"[55] The *Merrill* "factors are not exhaustive, and the [trial] court is not required to enter findings on each factor."[56] Instead, "the superior court's findings regarding the division of property need only be sufficient to indicate the basis of [its] conclusion[s]."[57] "Whe[n] the [superior] court makes these threshold findings, we generally will not reevaluate the merits of the property division."[58]

The superior court's reasoning, although not especially detailed, is discernable. In its form findings of fact and conclusions of law, the court observed that David died after the decree of divorce was issued and then stated that "the parties' relative earning capabilities, future economic need, and the factual circumstances" relating to David's death made an unequal distribution equitable. The court further noted that David's "children (the beneficiaries of his estate) attempted to hide and sell marital assets prior." Although the court did not specify percentages in this order, the attached property distribution spreadsheet shows that the court divided the marital estate 90% to

---

[54]    (...continued)
(Alaska 1962) (establishing factors).

[55]    *Hockema*, 403 P.3d at 1088.

[56]    *Id.*

[57]    *Id.*

[58]    *Dundas v. Dundas*, 362 P.3d 468, 477 (Alaska 2015) (alteration in original) (quoting *Stanhope v. Stanhope*, 306 P.3d 1282, 1289 (Alaska 2013)).

10% in favor of Debra.[59] These findings are "sufficient to indicate the basis of the court's conclusion[s]."[60]

The estate argues that the superior court abused its discretion in dividing the marital estate because it "based this 90/10 allocation at least partially on the fact that one party was the estate of a deceased spouse," which constituted "consideration of an improper factor." The estate argues that at the time of separation "Debra was not the economically disadvantaged party" and that "the parties' relative earning capabilities did not favor Debra." The estate also asserts that the balancing factors should "create a division of assets closer to 50/50."

The estate's argument that the court improperly considered David's death is unpersuasive.[61] David's death could be properly considered as an element of "the circumstances and necessities of each party."[62] Because David is deceased, Debra's relative financial needs are far greater. This disparity is a reasonable basis to order an unequal division of the marital estate. In *Downs v. Downs* we upheld an unequal distribution of property in favor of the spouse who would have to bear the cost of living

---

[59] The allocation of the assets and debts yielded an initial distribution of 89% to 11%; the court ordered an equalization payment to arrive at the final distribution of 90% to 10%.

[60] *See Hockema*, 403 P.3d at 1088.

[61] The two cases cited by the estate in support of this argument are inapposite. The first addresses child custody, not property division. *West v. West*, 21 P.3d 838, 841 (Alaska 2001). The second explains that a court may consider a party's improper post-separation conduct with respect to marital property when allocating the property, it just cannot consider the fault of the parties in contributing to the breakdown of the marriage. *Oberhansly v. Oberhansly*, 798 P.2d 883, 884-85 (Alaska 1990). Neither supports the estate's argument that the death of one spouse is an improper factor to consider when dividing the marital estate.

[62] *See* AS 25.24.160(a)(4)(G).

independently, rather than the spouse who resided in assisted living funded by long-term care insurance and Medicaid.[63] Because the spouse living independently would have greater needs, it was not an abuse of discretion to award that spouse a greater share of the marital estate.[64] The same is true here: in light of David's death, the superior court did not abuse its discretion in dividing the property unequally in Debra's favor due to her far greater "future economic need."[65]

### 2. Any reliance on the estate's conditional agreement to assume the mortgage on the marital residence was an abuse of discretion.

In its order on reconsideration, the superior court stated another reason for the property division: "[t]he parties agreed that [the estate] would assume the mortgage," so the court merely "adopted the parties' agreements before making the contested property valuation and distribution determinations." The court seems to have been relying on the estate's argument in its trial brief that it should be allocated both the marital home and the associated debt. But the estate's agreement to assume the debt was implicitly conditioned on also being awarded the property. Therefore, to the extent the court relied on this agreement in allocating the debt to the estate, doing so was an abuse

---

[63]     440 P.3d 294, 296, 299 (Alaska 2019).

[64]     *Id.* (citing AS 25.24.160(a)(4)(G)).

[65]     In reference to the superior court's finding that David's children "attempted to hide and sell marital assets prior," the estate suggests "it would be error to skew the percentage of distribution because of the actions of non-party witnesses in this case." It is not clear whether the superior court relied on this finding in dividing the marital property. The finding may have pertained to the court's decision to classify particular pieces of property as marital or separate. In any event, the estate does not explain why the superior court could not take bad faith conduct by David's daughters — both beneficiaries of his estate and one the estate's personal representative in this litigation — into account when equitably dividing the marital property. This argument is therefore waived for inadequate briefing.

of discretion.  On remand, after re-classifying individual items of property consistent with this opinion, the superior court should revisit its allocation of the marital estate.

## V.      CONCLUSION

We VACATE the superior court's classification of the Missouri property as marital and the associated debt as non-marital and its classification of the vehicles as marital without making recapture findings.  We REVERSE the superior court's finding that the boat was transmuted to marital property and its decision to reduce the joint credit card debt.  We AFFIRM the superior court's valuation of the tools.  We REMAND for further proceedings consistent with this opinion.