*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

JACOB A. MARQUEZ, )
  ) Supreme Court Nos. S-19019/19029
   Appellant and )
   Cross-Appellee, ) Superior Court No. 3AN-22-07827 CI
  )
  v. ) O P I N I O N
  )
DAWN L. MARQUEZ, ) No. 7806 – April 10, 2026
  )
   Appellee and )
   Cross-Appellant. )
  )

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Dani Crosby, Judge.

Appearances: G.R. Eschbacher, Law Offices of Eschbacher & Eschbacher, Anchorage, for Appellant and Cross-Appellee. Michael Gershel, Law Office of Michael Gershel, Anchorage, for Appellee and Cross-Appellant.

Before: Carney, Chief Justice, and Borghesan, Henderson, Pate, and Oravec, Justices.

BORGHESAN, Justice.

## I. INTRODUCTION

This appeal and cross-appeal follow the division of a sizable marital estate due to divorce. One former spouse contests the following rulings: the superior court's decision that the marital landscaping business's obligation to reclaim lands used for gravel mining was not a marital debt; the court's decision to value a truck purchased by the other spouse after separation according to its fair market value, rather than original

purchase price; its decision not to assign value to certain personal items when no evidence of those items' value was presented; and its refusal to amend liens securing the balance on a large equalization payment. Seeing no reversible error in the superior court's rulings, we affirm them.

The other former spouse cross-appeals the superior court's decision not to award interest on the first two installments of the equalization payment, which was to be paid in full over four years. Because the superior court must explain any decision not to levy interest on an equalization payment, and the court made no explanation here, we vacate and remand for the court to explain its ruling.

## II. FACTS AND PROCEEDINGS

### A. Initial Proceedings And Partial Settlement

Jacob and Dawn Marquez filed for divorce after nearly 42 years of marriage.[1] The superior court promptly issued a divorce decree and bifurcated proceedings to divide their marital estate, which was worth approximately $8.2 million.

The parties jointly proposed an order apportioning certain assets, which the superior court adopted. Dawn received a cash distribution from the couple's residential rental business. Jacob received a cash distribution from their landscaping business, Knik Landscaping, and also retained that business. Dawn remained an employee of Knik Landscaping, receiving a reduced salary and health insurance. The couple divided ownership of several vehicles, including a truck that Dawn purchased with cash shortly after separation. Jacob retained the marital home.

### B. Property Division Order

The superior court held a two-day property trial, hearing evidence about remaining property disputes.

---

[1] Dawn died while this appeal was pending. Her estate has been substituted in her place as a party to this action.

The couple split 16 parcels of real property. Altogether, Jacob received eight parcels worth $2,524,000, including the marital home and several rental properties. Dawn received eight parcels worth $2,021,000 — two empty lots, a condominium in Mexico, and five rental properties.

One item in dispute was a truck that Dawn had purchased after separation. The court declined to treat the vehicle purchase as a reasonable living expense.[2] Instead, it allocated the value of the truck to Dawn. But it valued the truck according to its fair market value of $32,389 rather than its purchase price of $63,681. The court accepted testimony that the truck had been damaged by a falling tree and that the purchase price was likely inflated due to the market effects of the COVID-19 pandemic.

Jacob asked the court to value, as a marital debt, Knik Landscaping's obligation to reclaim lands, owned by a third party, on which Knik mined gravel. At trial Jacob presented expert testimony from the owner of a local excavation company, who quoted a price of $203,925 to reclaim the lands in compliance with the borough code. The superior court declined Jacob's request to credit the estimate as a marital debt for three reasons. First, it explained that the cost was uncertain and not owed until some future, undetermined time and reasoned that the business had sufficient time to offset those costs with future proceeds. Second, the court reasoned that it would be inconsistent with the parties' asset-based valuation of the business to account for future business costs in the marital estate while excluding future profits. Third, the court explained, the estimated costs presented by Jacob assumed that the reclamation work would be outsourced, which the court found uncertain in light of testimony indicating that Knik Landscaping had performed its own reclamation work in the past.

---

[2] "Marital assets that are spent after separation for marital purposes or normal living expenses are not typically taken into account in the final property division." *Day v. Williams*, 285 P.3d 256, 264 (Alaska 2012) (quoting *Partridge v. Partridge*, 239 P.3d 680, 692 (Alaska 2010)).

When Dawn moved out, she took several personal items from a shed, which led to a dispute about how items in the shed should be valued. Dawn testified that Jacob had agreed to let her take a number of such items. At trial Jacob did not acknowledge such an agreement. Rather, he testified that Dawn refused to allow him access to the shed to take an inventory of the items. He indicated that he would be willing to allow Dawn to keep the items if he could keep his own fishing gear, guns, and gun accessories at "no cost." Jacob later acknowledged an agreement with Dawn about items in the shed, but insisted that the court should assign value to the items Dawn had taken because his items had been assigned values. The court's final property spreadsheet included values for Jacob's personal items but not Dawn's.

The superior court divided the marital estate 53%/47% in Dawn's favor to account for her chronic health problems. To effectuate the division, the court ordered Jacob to pay Dawn an equalization payment of $1,015,751.

## C.     Motion For Partial Reconsideration

Jacob moved for partial reconsideration. He reasserted that the reclamation cost was a marital debt arising from a marital enterprise, so it should be accounted for in the division of the marital estate. He challenged the court's decision to value Dawn's truck at fair market value. And he argued that the court should assign a value to items in the shed that Dawn took when she moved out of the marital home.

Dawn opposed. First, she argued that the valuation of the business presented by the parties at trial was based on the assets of the landscaping company; just as the award of the business to Jacob gave him the benefit of future profits, it also gave him the liabilities of future business costs such as land reclamation. Dawn argued that the cost of reclamation was not an outstanding debt because there was no creditor to be paid and the cost, if any, would not be incurred until 2030.

Second, Dawn defended the superior court's valuation of the truck. She argued that because Jacob did not demonstrate that the truck was "wasted, dissipated,

or converted to non-marital form,"[3] the court properly valued the truck at its current fair market value rather than its original purchase price.

Third, for the items in the shed, Dawn noted that it was unclear whether Jacob was arguing that the court should not have valued items he received, or that it should have valued items that Dawn received. Dawn addressed both arguments: for Jacob's personal items, there was undisputed testimony about the items' value; for Dawn's personal items, however, Jacob had not identified specific items nor provided testimony regarding their value.

In reply, Jacob stated that he did not produce evidence indicating the value of the property in the shed because he relied on an agreement with Dawn that "he would receive his personal property without charge."

The court denied the motion "for the reasons stated in [Dawn's] response."

### D.     Equalization Payment Proceedings

The parties later conferred to create a payment schedule for the equalization payment. They disagreed about the repayment timeframe, whether deferred payments should carry interest, and what real property would secure the obligation.

Jacob, asserting that he did not have the cash to pay the equalization payment in full, sought to pay $400,000 upfront and the remaining $615,751 in interest-free installments over five years. Dawn sought a three-year repayment timeline and opposed Jacob's request to avoid paying interest, noting that Jacob agreed to a large equalization payment so he could retain two additional income-generating properties.

The superior court, crafting a middle-ground approach, ordered Jacob to make an initial payment of $400,000; payments of $153,937.75 in February 2025 and 2026; at least half the remaining balance by February 2027; and the remainder in full

---

[3]     *Day*, 285 P.3d at 264 (quoting *Ethelbah v. Walker*, 225 P.3d 1082, 1090 (Alaska 2009)).

by February 2028. The court ordered that the balance would not accrue interest pending the first two payments, but upon February 1, 2026, would begin accruing interest pending the final two payments. These four payments through 2028 were secured by deeds of trust to three properties, previously awarded to Jacob, with an aggregated value of $770,000.

Jacob made the first payment of $400,000 and moved for partial reconsideration of the lien securing the payment arrangement. He asked to consolidate the three deeds of trust into a single deed that described all three properties and contained a partial release clause for two of the properties. Dawn opposed, noting the court's order did not mention a release clause.

The court denied reconsideration.

Jacob appeals the superior court's rulings with respect to the reclamation cost, the truck's value, the valuation of Jacob's personal items but not Dawn's, and the partial release clause;[4] Dawn cross-appeals the court's ruling awarding only partial interest on the equalization payment.

## III.   STANDARD OF REVIEW

Equitable property division is a three-step process where the trial court (1) determines "what property is marital and available for distribution," (2) values the property, and (3) equitably distributes the property.[5] "The first step — characterizing property as either marital or separate — 'may involve both legal and factual questions.' "[6] We "review the court's underlying factual findings on classification . . . of marital property for clear error."[7] "Clear error exists when we are 'left with a definite

---

[4]     Jacob also appealed one other finding that has since been withdrawn.

[5]     *Miller v. Miller*, 105 P.3d 1136, 1139-40 (Alaska 2005).

[6]     *Pasley v. Pasley*, 442 P.3d 738, 744 (Alaska 2019) (quoting *Beals v. Beals*, 303 P.3d 453, 459 (Alaska 2013)).

[7]     *Ethelbah*, 225 P.3d at 1086.

and firm conviction that the superior court has made a mistake.' "**8**  However, we review questions of law de novo, using our independent judgment.**9**  "The second step, valuation of assets, is a factual determination that we review for clear error."**10**  The third step, equitable distribution of the property, we review for abuse of discretion.**11**  The trial court's decision to award or withhold interest on a divorce judgment is an extension of the court's equitable powers that is also reviewed for abuse of discretion.**12**

## IV.   DISCUSSION

### A.   The Superior Court Did Not Err In Declining To Value Knik Landscaping's Obligation To Reclaim The Mine As A Marital Debt.

Jacob challenges the superior court's ruling that the cost of reclaiming Knik Landscaping's gravel mining site was not a marital debt.  At trial Jacob offered expert testimony from a local business owner regarding the reclamation cost.  The expert quoted a cost of $203,925 for Knik Landscaping to hire a contractor, such as himself, to reclaim the site.  When completing the parties' joint property division table,**13** Jacob listed this $203,925 sum as a marital debt.  But the superior court "decline[d] to include future reclamation costs as a marital debt."  Jacob argues that the superior court's decision was error.

We begin our analysis by noting the particular way the parties presented the value of Knik Landscaping for the court's consideration.  Although Knik was a well-

---

**8**      *Id.* (quoting *Josephine B. v. State, Dep't of Health & Soc. Servs., Off. of Childs.' Servs.*, 174 P.3d 217, 220 (Alaska 2007)).

**9**      *Aubert v. Wilson*, 483 P.3d 179, 186 (Alaska 2021) (citing *Grove v. Grove*, 400 P.3d 109, 112 (Alaska 2017)).

**10**      *Beals*, 303 P.3d at 459.

**11**      *Aubert*, 483 P.3d at 186.

**12**      *See Dixon v. Dixon*, 747 P.2d 1169, 1171-72 (Alaska 1987).

**13**      *See* Alaska R. Civ. P. 90.1(e) ("In divorce cases involving property division disputes, . . . the parties shall file . . . a list, including a brief description of all assets and liabilities [and] the value of each asset and liability.").

established business, the parties did not present an expert to testify about the business's value as a going concern. Instead, the parties presented the court with evidence of Knik's "hard assets." And Jacob argued that the future reclamation cost incurred through Knik's business activities was the parties' personal obligation, not an element of the business's value.

The legal basis for this approach is questionable. The general rule is that "obligations incurred in the normal operation of a marital property business are almost always marital debts."[14] But Knik is a limited liability company (LLC). Alaska law shields members of LLCs from a variety of liabilities, including those arising under tort and contract.[15] There is some indication in the record that the reclamation obligation was owed by Knik: Jacob's expert testified that the reclamation obligation was owed by Knik Landscaping, and Jacob's briefing asserts that the reclamation work is an "existing obligation that must be undertaken and performed by Knik Landscaping." Therefore, considering the reclamation cost as a potential debt of the marriage may not accurately reflect the underlying legal reality. But Dawn did not object on this ground.[16] Therefore, we approach the issue of reclamation costs as the parties presented it and the superior court decided it. The parties focus on whether the future reclamation costs are a debt.

---

[14] 2 BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY, § 6:97 (4th ed. 2024).

[15] AS 10.50.265 ("A person who is a member of a limited liability company . . . is not liable, solely by reason of being a member . . . whether the liability arises in contract, tort, or another form."); accord Societe Fin., LLC v. MJ Corp., 542 P.3d 1159, 1173-74 (Alaska 2024) (holding that person acting as "100% owner, manager, organizer, and agent" of LLC would not necessarily be found personally liable for LLC's obligations).

[16] Although Dawn argued that the reclamation obligation was not a debt, she does not appear to have specifically argued that it was the sole responsibility of the LLC or that she and Jacob could not be held personally liable.

"The burden of proving the existence of a debt is upon the party who seeks to divide it."[17] Whether a debt exists is generally a question of fact reviewed for clear error, although whether the court applied the correct legal rule in determining the existence of a marital debt is a legal question that we review de novo.[18]

A debt "is that which is due from one person to another; it is an obligation which one person is bound to pay to another; that of which payment is liable to be extracted."[19] A marital debt subject to division is identified by the existence of a debtor, a creditor, and an amount owed.[20] "When a contingent debt is unreasonably speculative, the court does not err by refusing to consider it."[21] For example, the Wisconsin Supreme Court held that a couple's liability to the IRS for unpaid taxes was not a marital debt because the specific amount had been appealed and was still in dispute.[22] And in an unpublished decision, an Ohio appellate court ruled that a mandatory future "tap-in" fee to be assessed by the county to connect the marital home to the county sewer system was not a marital debt because the fee had not yet been charged and the precise amount had not yet been determined.[23]

---

[17] 2 TURNER, *supra* note 14, § 6:96.

[18] *See, e.g., Vang v. Xiong*, 531 P.3d 979, 983 (Alaska 2023) ("We review factual findings, including the . . . characterization of . . . transfers of funds as loans or gifts [based on trial evidence], for clear error . . . . But classification decisions based on statute, contract, or intent are applications of law to fact reviewed de novo." (internal quotation marks omitted)).

[19] 2 TURNER, *supra* note 14, § 6:96 (quoting *Almond v. Gilmer*, 49 S.E.2d 431, 442 (Va. 1948) (Hudgins, C.J., concurring)) (internal quotation marks omitted).

[20] *Id.*

[21] *Id.* § 6:98.

[22] *Steinmann v. Steinmann*, 749 N.W.2d 145, 163-64 (Wis. 2008) (describing tax liability as "too speculative" to consider when dividing marital estate).

[23] *Mitchell v. Mitchell*, No. 2007-P-0023, 2008 WL 553246, at *5-7 (Ohio App. Feb. 29, 2008).

Jacob argues that the reclamation costs are a valid debt because an obligation currently exists to reclaim the lands mined for gravel and that he presented evidence of the cost to do so. Dawn responds that Knik Landscaping does not owe any particular sum of money to anyone to perform the reclamation work, and therefore no debt exists. As Dawn points out, the cases Jacob cites in support of his position all refer to a spouse's obligation to pay specific amounts of money: credit card debt, student loans, and federal income tax debt, for example.[24] In all of those cases, there was a readily identified creditor and a reasonably certain amount of money owed.

This case is different. Key elements of the asserted debt were uncertain or contingent. Although Jacob presented evidence of the cost to hire a contractor to reclaim the entire property, the superior court found that Knik Landscaping had previously performed reclamation work itself and likely would do the remaining work itself too. Therefore, the court found it unlikely that the cost estimate Jacob presented was "truly going to be incurred in that manner."

The superior court also found that the reclamation work would not have to be performed for some time, and this finding is supported by the record. Jacob himself testified that the Borough informed Knik that "we need to be finished in 2030, but that can be renewed again. So everything is changeable." Jacob's expert also acknowledged that it would not make sense to reclaim the entire property while it was still being worked on. This testimony indicated that Knik might continue mining even past 2030, making it unclear when the reclamation work would have to be completed.

---

[24] *See Stanhope v. Stanhope*, 306 P.3d 1282, 1286, 1290-91 (Alaska 2013) (disputing superior court's characterization of credit card debt as non-marital); *see also Richter v. Richter*, 330 P.3d 934, 939 (Alaska 2014) (disputing superior court's classification of monetary loan from family member as marital debt); *Perry v. Perry*, 449 P.3d 700, 703-05 (Alaska 2019) (disputing characterization of portions of a student loan as non-marital); *Jones v. Jones*, 942 P.2d 1133, 1137 (Alaska 1997) (instructing trial court to quantify, allocate, and account for former husband's federal income tax debt on remand).

Given the superior court's factual findings that the cost of reclaiming the lands would not be incurred for some time and that there was no specific amount owed (nor even credible evidence of future cost), we see no error in the court's refusal to treat this cost as a marital debt. Like the liabilities in the decisions by other courts cited above, the amount of the reclamation cost was speculative, contingent on future events, and would be incurred years after the divorce was final.

## B. The Superior Court Did Not Clearly Err By Valuing The Truck At Fair Market Value.

Generally, marital property is "valued as close as possible to the date of trial."[25] But when there is an indication that one spouse wasted, dissipated, or converted a marital asset to non-marital property before trial, the superior court may "recapture" the lost value by first valuing the asset at the time of separation, and then allocating that value to the spouse that wasted it.[26] Recapture is justified only when the court expressly finds, "based on evidence, that the assets in question were actually wasted, dissipated, or converted to non-marital form."[27] Whether an asset is wasted, dissipated, or converted to non-marital form is a question of fact that we review for clear error.[28]

Here, the superior court classified the truck Dawn purchased after separation as marital property and valued it at fair market value — $32,389 — as opposed to its purchase price of $63,681.[29] Jacob challenges the court's valuation,

---

[25] *Day v. Williams*, 285 P.3d 256, 264 (Alaska 2012) (quoting *Miller v. Miller*, 105 P.3d 1136, 1143 (Alaska 2005)).

[26] *See Ethelbah v. Walker*, 225 P.3d 1082, 1090 (Alaska 2009).

[27] *Jerry B. v. Sally B.*, 377 P.3d 916, 924 (Alaska 2016) (quoting *Day*, 285 P.3d at 260) (internal quotation marks omitted).

[28] *See Ethelbah*, 225 P.3d at 1090-91.

[29] *See* 2 TURNER, *supra* note 14, § 7:8 (indicating marital property commonly valued using "present net fair market value").

arguing that Dawn dissipated marital funds by buying a truck that then depreciated substantially in value.

The party seeking to recapture the value of marital property "bears the burden of proving the first two elements of dissipation — the fact that the asset in question existed, and the fact that it was lost during or after the marital breakdown."[30] Once proven, the burden shifts to the other spouse to show that she did not actually dissipate the asset, meaning she did not have the "intent to deprive the other spouse of the other's share of the marital property."[31]

Jacob argues that the first two elements of dissipation were met and Dawn used the cash for her own benefit, so the superior court should have recaptured the cash value. But the superior court, in denying reconsideration on this issue, adopted Dawn's argument that there was no evidence that the truck was wasted or dissipated.

We see no clear error in its ruling that Dawn did not commit waste. Dawn testified that the truck's fair market value of $32,389 was due to physical damage by a falling tree and that its purchase price was likely inflated by market forces during the COVID-19 pandemic. This testimony, which was not disputed, sufficiently supports the court's finding that the depreciation in the truck's value was not Dawn's fault. To the extent Jacob means to argue that buying the truck in itself was an act of waste, Dawn's testimony that she purchased the new truck out of concern for gas prices and that her old truck (an older super-duty model) was being repaired sufficiently supports the court's finding that no waste occurred.

---

[30]     *Ethelbah*, 225 P.3d at 1090 (quoting 2 BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY, § 6:105 (3d ed. 2005)).

[31]     *Jones v. Jones*, 942 P.2d 1133, 1140 (Alaska 1997); *see also Aubert v. Wilson*, 483 P.3d 179, 189 (Alaska 2021).

**C.**     **Jacob Did Not Present Sufficient Evidence For The Superior Court To Value The Items Dawn Took From The Shed.**

The superior court rejected Jacob's argument at trial that it should not value his personal items like fishing gear, guns, and gun accessories because the court did not assign any value to items that Dawn took from the shed. The court reasoned that "there [wa]s no evidence to support" the suggestion that these items were equivalent in value, and it noted that some of the items in the shed were Dawn's separate property. Jacob appeals, advancing a somewhat different argument. He now argues that we should remand this case to the superior court to value items in Dawn's possession so that they may be credited against her in the property division, just as his personal items were credited against him.

Jacob fails to identify any error by the superior court. He did not offer evidence of value for the items that Dawn took from the shed. "[I]t is the duty of the parties, not the court, to ensure that all necessary evidence is before the court in divorce proceedings."[32] In appealing the superior court's findings, a party is "not in a position to claim the trial court erred in using the figures they supplied."[33] Therefore, "a party who fails to present sufficient evidence [in a divorce proceeding] may not later challenge the adequacy of the evidence on appeal."[34] The superior court did not clearly err by assigning no value to items for which there was no evidence of value.[35]

Although Jacob argues that Dawn's actions deprived him of the ability to offer evidence of value, he does not assert that he asked the superior court for the relief

---

[32]     *Ethelbah*, 225 P.3d at 1093 (quoting *Root v. Root*, 851 P.2d 67, 69 (Alaska 1993)).

[33]     *Hartland v. Hartland*, 777 P.2d 636, 640 (Alaska 1989) (quoting *Nat'l Bank of Alaska v. J.B.L. & K. of Alaska, Inc.*, 546 P.2d 579, 590 (Alaska 1976)).

[34]     *Ethelbah*, 225 P.3d at 1096 (quoting *Root*, 851 P.2d at 69).

[35]     *See Brooks v. Brooks*, 733 P.2d 1044, 1056 (Alaska 1987) (reviewing superior court's decision not to value items in spouse's possession for clear error).

he seeks now: for Dawn to produce the items she took so that they can be inventoried and valued. Therefore, we cannot say that the superior court committed any error that warrants reversal.

We therefore decline Jacob's request to vacate and remand the property division to allow further proceedings.

### D. It Was Not An Abuse Of Discretion To Deny Jacob's Request For A Partial Release Clause For The Liens Securing The Equalization Payments.

Jacob argues that the superior court erred by not including a clause in the deed of trust securing the equalization payment that would authorize a partial release of the liened properties when a partial payment was made. Jacob requested this modification for the first time in his motion for partial reconsideration — after he signed the deeds of trust. Arguments may not be raised for the first time in a motion for reconsideration, so the superior court did not abuse its discretion by declining to include the partial release clause for which Jacob advocates.[36]

### E. The Superior Court Did Not Sufficiently Explain Its Decision To Award Interest Only On Later Installments Of The Equalization Payment.

Dawn cross-appeals the superior court's order on the equalization payment, arguing its decision to award only partial interest was an abuse of discretion that reduced her distribution of the marital estate.

The superior court has discretion to determine the best method for dividing the marital estate. Although the preferred method of equalizing the estate is the allocation of property, the superior court may also order equalization payments in order

---

[36] *Ivy v. Calais Co.*, 397 P.3d 267, 275 (Alaska 2017) ("An argument is ordinarily not preserved for appeal if . . . it was only raised after the party filed a motion for reconsideration."); *see Wells v. Barile*, 358 P.3d 583, 589 n.17 (Alaska 2015) (noting that superior court was not required to address new arguments in denying reconsideration because "arguments raised for the first time on reconsideration are waived").

to effectuate an equitable property division.[37]  The superior court has discretion to allow an equalization payment to be made over time[38] as well as to award or withhold interest to effectuate a "just resolution" of marital financial matters.[39]

When the court defers a monetary distribution as part of a property division, "[t]he real value of the . . . award is . . . substantially less than its face value."[40] "To compensate for the time value of money," the court should award interest[41] to ensure "the real economic value of a deferred [distribution] is equal to the amount which the court believes it is awarding."[42]  The court may decline to award interest if the payor spouse would otherwise suffer undue hardship.[43]  But if it declines to award interest, it "must explain its decision."[44]

The superior court ordered Jacob to pay Dawn the remaining $615,751 in equalization payments over four annual installments, postponing the accrual of interest

---

[37]     *Hudson v. Hudson*, 532 P.3d 272, 284 (Alaska 2023).

[38]     *Id.* at 284-85.

[39]     *Dixon v. Dixon*, 747 P.2d 1169, 1172 (Alaska 1987).  Contrary to Dawn's suggestion, a trial court's authority to impose or withhold interest on a deferred marital distribution is equitable, not statutory.  This authority is "independent of or concurrent with judgment interest provisions" as part of the court's "equitable discretion."  David J. Marchitelli, Annotation, *Divorce and Separation:  Award of Interest on Deferred Installment Payments of Marital Asset Distribution*, 10 A.L.R.5th 191, § 2[a] (1993).

[40]     3 TURNER, *supra* note 14, § 9:10.

[41]     *Id.*

[42]     *Id.* ("An award of interest on a deferred monetary award [of marital property] is not an award of marital property but rather compensation to the recipient spouse for delay in receiving . . . her full share of the marital estate.").

[43]     Marchitelli, *supra* note 39, § 2[a] ("The ability of the payor spouse to pay interest in addition to the principal award without undue or special hardship is a key factor weighed heavily in the consideration of whether to award interest on installment distributions of marital property.").

[44]     *Hudson v. Hudson*, 532 P.3d 272, 285 (Alaska 2023).

until after the first two payments had become due. But it did not explain why it did so. Whether the trial court has abused its discretion by failing to award interest is largely determined by the facts and circumstances of each case.[45] If no explanation for the denial of interest is given, "any attempt by the reviewing court to determine whether there has been an abuse of discretion would be speculative."[46] We therefore vacate the order awarding partial interest on the deferred distribution and remand so the superior court may explain its reasoning.

## V.    CONCLUSION

We AFFIRM the order dividing the marital estate. We VACATE and REMAND the order awarding only partial interest on the equalization payment for further explanation.

---

[45]    Marchitelli, *supra* note 39, § 2[a].

[46]    *Id.*