*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| KENNETH ALLEN KESSLER, | ) | |
| | ) | Supreme Court No. S-16458 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-15-05989 CI |
| v. | ) | |
| | ) | O P I N I O N |
| DIANNA MICHELLE KESSLER, | ) | |
| | ) | No. 7223 – February 16, 2018 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Patrick J. McKay, Judge.

Appearances: Kara A. Nyquist, Anchorage, for Appellant. Roberta C. Erwin, Palmier ~ Erwin, LLC, Anchorage, for Appellee.

Before: Stowers, Chief Justice, Winfree, Maassen, Bolger, and Carney, Justices.

BOLGER, Justice.

## I. INTRODUCTION

Kenneth Kessler purchased a condominium in the summer of 1999, shortly before he and Dianna Kessler began dating. Kenneth and Dianna lived in that condominium for nearly all of their 15-year relationship. In its property division order following the couple's divorce, the superior court found that the condominium was originally Kenneth's separate property but that it had transmuted into the couple's marital property. Kenneth now appeals.

We reverse and remand. The condominium only became marital property if Kenneth intended to donate it to the marital estate, and we agree with Kenneth that the evidence at trial did not demonstrate he possessed any such intent. We recognize, however, that our case law on this issue has at times been confusing and imprecise, so before explaining the facts of this case in more detail we first take a few moments to clarify the law in Alaska on transmutation by implied interspousal gift.

## II.   TRANSMUTATION BY IMPLIED INTERSPOUSAL GIFT

Alaska follows the law of equitable distribution, which is a set of rules for dividing property upon divorce.[1] When conducting that division, the court first distinguishes between separate property and marital property.[2] As a general rule (subject to various exceptions), property is separate property if it was acquired by a spouse before the marriage, and property is marital property if it was acquired by a spouse during the marriage.[3] This classification process is important because only marital property is

---

[1]     *See Burts v. Burts*, 266 P.3d 337, 342 (Alaska 2011) ("Alaska uses a statutory scheme of equitable division codified in AS 25.24.160(a)(4)." (citing *Clauson v. Clauson*, 831 P.2d 1257, 1262 (Alaska 1992))).

[2]     *Beals v. Beals*, 303 P.3d 453, 458-59 (Alaska 2013).

[3]     *See Horning v. Horning*, 389 P.3d 61, 64 (Alaska 2017) (citing *Schmitz v. Schmitz*, 88 P.3d 1116, 1124 (Alaska 2004)); *Hansen v. Hansen*, 119 P.3d 1005, 1009 (Alaska 2005) (citing *Lewis v. Lewis*, 785 P.2d 550, 558 (Alaska 1990)).

subject to division upon divorce.[4]   Separate property, by contrast, is subject to "invasion"[5] only "when the balancing of the equities between the parties requires it."[6]

Property brought into the marriage as separate property can sometimes change, or transmute, into marital property.[7]  One way this change can take place is by an implied interspousal gift.[8]  This occurs when one spouse intends to donate separate property to the marital estate and engages in conduct demonstrating that intent.[9]  We have, however, sometimes been less than precise in describing this doctrine.  Take the following refrain, repeated in a number of prominent equitable distribution cases by this court:  "Transmutation occurs when married parties intend to make a spouse's separate property marital and their conduct during marriage demonstrates that intent."[10]  Another favored statement of the rule is similar:  "Transmutation  occurs when a married couple

---

[4]     *Nicholson  v.  Wolfe*, 974 P.2d 417, 423 (Alaska 1999) (citing *Johns v. Johns*, 945 P.2d 1222, 1225 (Alaska 1997)).

[5]     *Id.*

[6]     AS 25.24.160(a)(4).

[7]     *Sparks v. Sparks*, 233 P.3d 1091, 1094 (Alaska 2010) (citing *Sampson v. Sampson*, 14 P.3d 272, 276 (Alaska 2000)), *overruled on other grounds by Engstrom v. Engstrom*, 350 P.3d 766, 771 (Alaska 2015).

[8]     *Id.* at 1096.

[9]     *Id.* at 1094, 1096.

[10]    *Harrower v. Harrower*, 71 P.3d 854, 857 (Alaska 2003) (citing *Sampson*, 14 P.3d at 277; *Martin v. Martin*, 52 P.3d 724, 727 (Alaska 2002); *Green v. Green*, 29 P.3d 854, 857 (Alaska 2001)); *see also Beals v. Beals*, 303 P.3d 453, 460 (Alaska 2013) (quoting *Odom v. Odom*, 141 P.3d 324, 332 (Alaska 2006)); *Odom*, 141 P.3d at 332 (quoting *Harrower*, 71 P.3d at 857).

demonstrates an intent, by virtue of their words and actions during marriage, to treat one spouse's separate property as marital property."[11]

Such language is inaccurate for two reasons. First, it suggests that the relevant intent is that of the "married parties" or the "married couple." That is incorrect. The question is whether the *owning spouse*, not the married couple, intended to make a gift.[12] Second, and more subtly, it fails to define what it means to intend to "treat" separate property "as marital property" or intend to "make" property "marital." A judge or attorney not familiar with equitable distribution law could be forgiven for assuming that a spouse intends to treat separate property as "marital" when he or she shares that property *during the marriage*. But that assumption would be incorrect. The distinction between marital property and separate property is simply a way of categorizing property for purposes of division upon divorce, not a statement of property rights during marriage.[13] Thus, the intent that must be shown is the intent of the owning spouse that

---

[11] *Schmitz v. Schmitz*, 88 P.3d 1116, 1125 (Alaska 2004) (citing *Harrower*, 71 P.3d at 857; *Martin*, 52 P.3d at 727 & n.8; *Green*, 29 P.3d at 857; *Lundquist v. Lundquist*, 923 P.2d 42, 47 (Alaska 1996)); *see also Abood v. Abood*, 119 P.3d 980, 984 (Alaska 2005) (quoting *Schmitz*, 88 P.3d at 1125).

[12] *See Sparks*, 233 P.3d at 1094, 1096; *Thomas v. Thomas*, 171 P.3d 98, 107 (Alaska 2007) ("Separate property can become marital property where that is the intent of the *owner* and there is an act or acts which demonstrate that intent." (emphasis added) (quoting *Chotiner v. Chotiner*, 829 P.2d 829, 832 (Alaska 1992))); 1 BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 5:69, at 665 (3d ed. 2005) ("Almost all of the cases define the key issue as whether the owner of the separate property involved had actual intent to give that property to the marital estate.").

[13] *See* 1 TURNER, *supra* note 12, § 1:1, at 2 (contrasting equitable distribution with the doctrine of community property, and explaining that while "community property controls property ownership during the marriage and property distribution upon death as well as property distribution upon divorce," equitable distribution "applies only in (continued...)

-4-                                                                                              7223

his or her separate property be treated as marital property *for the purpose of dividing property in the event of a divorce*.[14] This idea is better captured by framing the inquiry as an intent to "donate" or "convey" separate property to the marital unit or marital estate,[15] rather than as an intent to "treat . . . separate property as marital property."[16]

Our imprecision in describing the donative intent inquiry has occasionally been compounded by our reliance on the *Cox* factors. In *Cox v. Cox* we drew on earlier transmutation cases and set out four "relevant factors" for "determining whether . . . property should be characterized as marital," namely, " '(1) the use of property as the parties' personal residence, . . . (2) the ongoing maintenance and managing of the property by both parties,' . . . (3) placing the title of the property in joint ownership and (4) using the credit of the non-titled owner to improve the property."[17]

We recognize now that some later cases applying *Cox* may have over-emphasized the importance of the *Cox* factors in determining whether the owning spouse possessed donative intent. Indeed, at times we have even appeared to suggest that the presence of certain factors is independently sufficient to establish transmutation. For example, we have written that "transmutation occurs when the non-owning spouse takes

---

[13] (...continued) divorce cases").

[14] *See Sampson*, 14 P.3d at 276-77 (noting that husband's "belief and representation" that his inheritance would be "available to [the couple] during the marriage [did] not suffice to warrant a finding that the assets were converted to marital property").

[15] *Sparks*, 233 P.3d at 1094.

[16] *Schmitz*, 88 P.3d at 1125.

[17] 882 P.2d 909, 916 (Alaska 1994) (citations omitted) (quoting *McDaniel v. McDaniel*, 829 P.2d 303, 306 (Alaska 1992)).

an active role in the operation of the property as a business"[18] and that the "requirement [of intent] may be met where a non-owner spouse 'devote[s] substantial efforts to [the property's] management, maintenance, or improvement.' "[19]

But when we first listed the four factors in *Cox*, we were simply drawing on prior cases and describing facts which we, as an appellate court deferentially reviewing a superior court's factual finding of donative intent, had previously found relevant in affirming or reversing that finding.[20] In other words, the *Cox* "factors" are merely specific facts that may, in particular cases, serve as *evidence* of the owning spouse's donative intent. We note that the third factor — placing the property in joint title — is *presumptive* evidence of intent and shifts the burden of proof to the owning spouse.[21] However, the presence or absence of this or any other *Cox* factor is not a proxy for the ultimate question: did the owning spouse intend to donate his or her separate property to the marital estate? That determination is case-specific, and we never meant to suggest that it could be answered by looking at the *Cox* factors alone.

We now examine the facts of this case and the evidence presented at trial, and we then explain why the superior court clearly erred when it found that Kenneth intended to donate the condominium to the marital estate.

---

[18]    *Abood v. Abood*, 119 P.3d 980, 988 (Alaska 2005).

[19]    *Thomas v. Thomas*, 171 P.3d 98, 107 (Alaska 2007) (second and third alterations in original) (quoting *Martin v. Martin*, 52 P.3d 724, 728 (Alaska 2002)).

[20]    *See Cox*, 882 P.2d at 916.

[21]    *Sparks v. Sparks*, 233 P.3d 1091, 1094 (Alaska 2010) ("[P]lacing separate [property] into joint title raise[s] a presumption that the party intended to donate separate property to the marital unit."), *overruled on other grounds by Engstrom v. Engstrom*, 350 P.3d 766, 771 (Alaska 2015).

## III.   FACTS AND PROCEEDINGS

In the summer of 1999, before he and Dianna started dating, Kenneth bought a condominium.  The couple started living in that condominium in 2000.  The couple married in 2010, and Dianna filed for divorce in 2015.

After the parties began living together, Dianna started working for the Alaska Surgery Center as a surgical technologist.  After 14 years with that organization, Dianna's 2015 gross wages were $51,911.  In 2003 Kenneth was injured while working at FedEx.  To supplement Kenneth's modest workers' compensation and annuity payments, Kenneth's father loaned Kenneth money, which Kenneth used to pay debts and monthly bills.

Kenneth and Dianna largely kept their finances separate.[22]  Both parties agreed that Kenneth paid the mortgage payments and condominium dues out of his personal bank account.  Dianna testified that she painted, put new windows in, installed laminate countertops and new blinds, and purchased a new washer and dryer for the property.  Dianna also testified that she paid most of the couple's other living expenses and bills.  According to Dianna, she believed that she was "investing" in the property by paying for these expenses.  But she did not explain the basis for this belief.  Neither Kenneth nor Dianna testified that Kenneth ever made any statements indicating his intent to donate the condominium to the marital estate.

After the trial, the superior court found that the condominium had been transmuted into marital property.  The superior court relied primarily on the fact that the couple used the property as the marital home and on Dianna's contributions to the

---

[22]   The parties' finances were not entirely separate.  They consolidated their credit card debts, although the superior court found that only a "small portion" of the consolidated debt was "attributable" to Kenneth.  The parties also maintained joint bank accounts in addition to their individual accounts.

management and maintenance of the property. The superior court also relied on a finding that Kenneth would have been unable to pay the mortgage from his separate account without Dianna's financial contributions to other parts of the marriage.

## IV. DISCUSSION

Whether a spouse intended to donate his or her separate property to the marital estate is a factual finding that we review for clear error.[23] A factual finding is clearly erroneous when, after reviewing the entire record, we are "left with a definite and firm conviction that the trial court has made a mistake."[24] We conclude that the superior court clearly erred in this case.

Dianna had the burden to prove that Kenneth intended to donate the condominium to the marital estate.[25] The best evidence of Kenneth's intent would have been "an express statement by [Kenneth] that he intended to give [Dianna] an interest in the property."[26] But no such statement was presented in this case. Instead, Dianna testified that she "believe[d]" that she was investing in the property by making other

---

[23]   *Beals v. Beals*, 303 P.3d 453, 459 (Alaska 2013).

[24]   *Abood v. Abood*, 119 P.3d 980, 984 (Alaska 2005).

[25]   1 TURNER, *supra* note 12, § 5:69, at 665 ("The burden of proving an implied gift lies upon the party who claims one."); *cf. Abood*, 119 P.3d at 984 ("Commingling separate property with marital property does not automatically lead to a finding of transmutation. But placing property in joint title raises a presumption of transmutation." (footnote omitted)).

[26]   *Sparks*, 233 P.3d at 1096 (quoting 1 TURNER, *supra* note 12, § 5:69, at 665).

contributions to the marriage. Dianna's unexplained and unilateral belief is not evidence of Kenneth's donative intent.[27]

The other evidence supporting a finding of donative intent was minimal. First, there was evidence showing that Dianna participated in some maintenance and upkeep on the property. But as we have previously held, in order for the non-owning spouse's "ongoing management and maintenance" of the property to be relevant to the owning spouse's donative intent, "the non-owning spouse's 'participation must be significant and evidence an intent to operate jointly.' "[28] Dianna's participation was not "significant"; indeed, even the superior court called the upgrades performed on the residence "minor."

Second, the superior court appeared to rely in part on Dianna's financial contributions to other aspects of the marriage, noting that "the parties realized the monetary contributions of each other in order to support themselves" and that Kenneth "would not have been able to [pay the mortgage or condominium fees] without the financial contributions" from Dianna. But neither Dianna nor the superior court ever explained how Dianna's contributions to other parts of the marriage demonstrated that Kenneth intended to donate the condominium to the marital estate, and we see no obvious reason why this would be the case. This fact is therefore of little relevance to determining whether Kenneth possessed donative intent.

---

[27]  *See* 1 TURNER, *supra* note 12, § 5:69, at 668 ("When the nonowning spouse gives self-interested testimony indicating his or her own personal belief or understanding that property was given to the marital estate, the testimony is unlikely to receive much weight.").

[28]  *Abood*, 119 P.3d at 988 (quoting *Keturi v. Keturi*, 84 P.3d 408, 417 (Alaska 2004)).

Finally, the couple's use of the condominium as their shared residence is of little probative value in this case. Although this is a factor that we have previously identified as potentially relevant to the donative intent inquiry,[29] it must be considered in the context of the entire case. As we have previously held, "the mere use of a separate asset for marital purposes cannot transform the separate asset into a marital asset."[30] Given the lack of further evidence of donative intent, we conclude that the couple's use of the property as the marital residence shows only that the condominium served an important marital purpose.

In sum, the record reveals almost zero evidence that Kenneth intended to donate the condominium to the marital estate. We therefore conclude that the superior court clearly erred when it found otherwise. We reverse the court's transmutation finding and remand this case for further proceedings.[31] We clarify, however, that this holding does not preclude Dianna from being awarded a share of the condominium. First, some portion of the home might be marital property under the doctrine of active appreciation if the home increased in value as a result of marital contributions to the

---

[29]     *Cox v. Cox*, 882 P.2d 909, 916 (Alaska 1994).

[30]     *Odom v. Odom*, 141 P.3d 324, 333 (Alaska 2006).

[31]     Dianna suggests that we could affirm the superior court's ruling on the ground that "Kenneth . . . purchase[d] the property after the parties were cohabiting in a domestic partnership." Dianna does not explain why the law of domestic partnership should apply despite the parties' later marriage. *See generally Boulds v. Nielsen*, 323 P.3d 58, 63-65 (Alaska 2014) (explaining the principles that apply to the division of property of an unmarried couple). And in any case the argument is undermined by the superior court's factual finding that Kenneth purchased the condominium "before [the parties] began dating or cohabitating."

property.[32] Second, in most equitable distribution states the use of marital funds to pay down the mortgage on separate property creates a marital interest in that property.[33] While Kenneth paid the mortgage and condominium dues out of his personal bank account, the record does not reflect whether the funds in that account were marital or separate. Finally, the superior court can invade Kenneth's separate property, including the condominium, if the equities so require.[34] The parties are free to litigate these issues on remand.

We also note that the superior court determined that the loans Kenneth received from his father were marital loans because "they were necessary to keep the residence." This reasoning no longer stands if the condominium is Kenneth's separate property. Because we are reversing the superior court's determination that the condominium was transmuted to marital property, the superior court should also reconsider its characterization of the loans from Kenneth's father.

## V. CONCLUSION

We REVERSE the judgment of the superior court and REMAND for further proceedings consistent with this opinion.

---

[32] *See Odom*, 141 P.3d at 333–34 ("For this doctrine to apply, there must be (1) appreciation of separate property during marriage; (2) marital contributions to the property; and (3) a causal connection between the marital contributions and at least some part of the appreciation."). "Marital contributions" can consist of both "marital funds and marital efforts," including the expenditure of "time and energy." *Schmitz v. Schmitz*, 88 P.3d 1116, 1125 (Alaska 2004).

[33] *See* 1 TURNER, *supra* note 12, § 5:26, at 399–400; *see also id.*, § 5:24, at 385–86 (illustrating effect of paying down mortgage with marital funds). The parties have not briefed this issue; we do not decide at this time whether to adopt this approach.

[34] *See* AS 25.24.160(a)(4).