NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| LANS SAXON, | ) |
| | ) Supreme Court No. S-18520 |
| Appellant, | ) |
| | ) Superior Court No. 3PA-20-01251 CI |
| v. | ) |
| | ) MEMORANDUM OPINION |
| YULIYA SAXON, | ) AND JUDGMENT* |
| | ) |
| Appellee. | ) No. 2014 – February 28, 2024 |
| | ) |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, John C. Cagle, Judge.

Appearances: Kara A. Nyquist, Nyquist Law Group, Anchorage, for Appellant. Seth J. Dinkel, Collier Law, Wasilla, for Appellee.

Before: Maassen, Chief Justice, and Carney, Borghesan, Henderson, and Pate, Justices.

## I.    INTRODUCTION

During a marriage the husband bought the family home with cash in the name of a limited liability company (LLC) that did not actually come into existence until later and showed his brother as a 95% owner. When the husband and wife separated about two years later, the husband, acting on behalf of the LLC, transferred ownership of the home to the parties' minor daughter. Following a trial on property

---

\*    Entered under Alaska Appellate Rule 214.

division issues, the superior court found that the home was marital property and that the husband's testimony to the contrary was not credible.  The husband appeals, arguing that the court erred by failing to trace the money used to buy the home and clearly erred by finding that the home was marital.  Seeing no error, we affirm the property decision.

## II.     FACTS AND PROCEEDINGS

### A.     Facts

Lans and Yuliya Saxon married in 2010.  The day before their wedding they signed a prenuptial agreement, agreeing they would each "separately retain all of his or her rights in his or her separate property."  At the time, Lans had around $300,000 in a bank account, as well as three properties in Florida and a vacant lot in Wasilla.

The family moved to Alaska in 2018 and spent a few days living in a van on Lans's Wasilla lot.  That property was actually titled in the name of Lans's brother, Eric, as of 2016; Lans later testified that he had put the lot in Eric's name as "collateral," with the plan that Eric, a builder, would eventually help him build a house on it.

Within a few days of the family's move to Alaska, however, Lans decided to buy the house across the street.  He bought it in the name of an LLC that did not exist at the time, only taking the legal steps necessary to form the LLC nine days later.  The purchase papers and the LLC paperwork did not mention Eric, whom Lans added to the LLC later as a 95% owner.

The Saxons lived in the Wasilla house for about a year and a half.  In February 2020 Yuliya moved out after discovering that Lans viewed the house as his separate property.  A few days later Lans, as the LLC's agent, transferred the house to the Saxons' oldest daughter, who was eight years old at the time.

### B.     Proceedings

Yuliya filed for divorce in February 2020, listing the Wasilla house as marital property.  In his answer, Lans wrote that the parties "d[id] not have a home."  Yuliya and Lans were the only witnesses at trial.

The superior court entered a divorce decree supported by findings of fact and conclusions of law. The court accepted the parties' prenuptial agreement as valid, confirming the parties' intent "to keep pre-marital property separate."

Accordingly, the court found that Lans's three Florida properties and Wasilla lot were not subject to division because he had bought them before the marriage. As for the Wasilla house bought during the marriage, however, the court concluded that it was marital. The court noted that Lans purchased it in the name of an LLC which "did not exist at the time the deed was signed" and that he only added his brother's name to the LLC later. The court did not believe Lans's testimony that he involved his brother in the purchase because of money Lans owed him, finding this explanation "negate[d]" by "the objective evidence of [Lans] transferring the property to his daughter." The court found that the house was marital property and that Lans's "actions in attempting to shield it from division [are] evidence of his intent and knowledge of it being marital."

Lans appeals, arguing that the superior court's characterization of the house as marital was erroneous.

## III. STANDARD OF REVIEW

"The characterization of property as separate or marital may involve both legal and factual questions."[1] "Legal questions are reviewed de novo. . . . We review findings of fact under the clearly erroneous standard."[2] "A finding of fact is clearly erroneous if, upon review of the entire record, we are left with a firm and definite conviction that a mistake has been made."[3] We give particular deference to the trial

---

[1]     *Odom v. Odom*, 141 P.3d 324, 330 (Alaska 2006).

[2]     *Id.*

[3]     *Fortson v. Fortson*, 131 P.3d 451, 456 (Alaska 2006).

court's determination of witness credibility, "because it is the function of the trial court, not of this court, to judge the credibility of witnesses."[4]

## IV. DISCUSSION

### A. The Superior Court Did Not Err By Failing To Trace The Funds Used To Buy The House.

Lans argues that because the superior court upheld the parties' prenuptial agreement, it was required to first "investigate[] the source of the funds used to purchase the house" and then, assuming that the source of the purchase money was separate, determine whether Yuliya could meet her burden of proving that Lans intended to donate the house to the marital estate. But Lans misstates the first step of the analysis by ignoring the governing presumption. Courts presume that property acquired during the marriage is marital property,[5] and "the party seeking to establish that property is separate bears the burden of proof."[6] Thus, "untraceable assets are marital property."[7] And "[i]f . . . the sources can be proved but their respective amounts cannot, the proper ratio cannot be determined"; in that case the court will deem the asset marital in its entirety.[8]

Lans appears to assume that the mere existence of the prenuptial agreement rebutted the marital-property presumption. But the court concluded, consistent with the agreement's express terms, that it simply "[kept] pre-marital property separate." The agreement therefore had no bearing on whether property bought *during* the marriage was marital or separate. Because the Wasilla house was

---

[4] *Ronny M. v. Nanette H.*, 303 P.3d 392, 399 (Alaska 2013).

[5] *See, e.g.*, *Kessler v. Kessler*, 411 P.3d 616, 618 (Alaska 2018); *Beals v. Beals*, 303 P.3d 453, 460 (Alaska 2013).

[6] *Pasley v. Pasley*, 442 P.3d 738, 745 (Alaska 2019).

[7] *Id.*

[8] *Schmitz v. Schmitz*, 88 P.3d 1116, 1128-29 (Alaska 2004).

indisputably purchased during the marriage, it was Lans's burden under our well-established rules to prove that it was purchased with his own separate funds.[9] We see no error in the court's application of the marital-property presumption.

B. **The Superior Court Did Not Clearly Err By Determining That The House Was Marital Property.**

Lans argues that the superior court clearly erred by finding the house to be marital property because he "testified at trial that he purchased the house with his separate money, and Yuliya admitted she did not have any evidence that marital money went into the house." But as explained above, property bought during the marriage is *presumed* to be marital; if Lans contended otherwise it was his burden to prove it, and the court could reasonably conclude that he failed to do so.[10]

Lans testified that he bought his interest in the Wasilla house using "zero dollars of Yuliya's money," instead using several hundred thousand dollars of his own cash that he kept "[i]n a hotel safe in [his] bedroom" and "stored in the van, stored in the apartment in Washington State." This cash, he testified, all "came from rental income." But he gave the court no evidentiary basis on which to conclude that the rental income was his own separate property; indeed, his testimony appears to reflect a mistaken belief that rental income he received during the marriage belonged to him alone.[11] Since rental income earned during the marriage is, like a salary, derived from a spouse's efforts during the marriage, it is itself a marital asset, regardless of who owns

---

[9]    *See id.*

[10]    *See Pasley*, 442 P.3d at 745.

[11]    *See Schmitz*, 88 P.3d at 1124 (explaining that income earned during marriage is marital); *see also, e.g.*, *In re Marriage of Cardona & Castro*, 321 P.3d 518, 522 (Colo. App. 2010) ("Income earned from separate property during the marriage is marital property."); *Selby v. Selby*, 149 S.W.3d 472, 485 (Mo. App. 2004) ("Income earned during the marriage from separate property is marital property, including rental income.").

the rental property.[12]  The superior court did not clearly err when it concluded that Lans failed to carry his burden to show that the Wasilla house was purchased entirely with his separate funds.

Nor do we see clear error in the court's failure to credit Lans's testimony on this subject.  The court highlighted the facts that the LLC used to purchase the house did not exist until "seven whole days *after* the date of the deed" and that Lans added his brother to the LLC later; the court saw these facts as contradicting Lans's pretrial assertions that Eric "paid for 95% of the house" and they formed the LLC "to hold title to the property."  The court believed that Lans's transfer of the house to the Saxons' eight-year-old daughter right after Yuliya moved out "negate[d] [his] assertion" that the house was 95% Eric's, implicitly rejecting Lans's claim that Eric donated his interest to the child in order to even out an earlier unfairness in the distribution of their father's estate.  The court found that these actions, as attempts to "shield [the house] from division," helped demonstrate Lans's "intent and knowledge of [the house] being marital."  These findings of intent and knowledge are derived mostly from oral testimony, and we therefore defer to the superior court's view of the parties' credibility.[13]

Because the Wasilla house, bought during the marriage, was presumptively marital and Lans failed to carry his burden of proving that it was bought

---

**12**     *See Hopper v. Hopper*, 171 P.3d 124, 131 (Alaska 2007) (holding that husband's "activities during the marriage in managing the [separately owned rental] property, finding renters, hiring people for maintenance purposes, and paying the various bills and taxes[] generated rental income" which "was akin to a salary" and part of marital assets).

**13**     *See Josephine B. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 174 P.3d 217, 222 (Alaska 2007) ("We . . . 'give particular deference to the superior court's factual findings when . . . they are based primarily on oral testimony, because the superior court, not this court, judges the credibility of witnesses and weighs conflicting evidence.' ").

entirely with his separate funds, the superior court did not clearly err by finding that the home was marital property.

## V.    CONCLUSION

We AFFIRM the decision of the superior court.