NOTICE

*Memorandum decisions of this court do not create legal precedent. A party wishing to cite such a decision in a brief or at oral argument should review Alaska Appellate Rule 214(d).*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| TREVOR PAUL FAIRBANKS, | ) | |
| | ) | Supreme Court No. S-19193 |
| Appellant, | ) | |
| | ) | Superior Court No. 3AN-19-05436 CI |
| v. | ) | |
| | ) | MEMORANDUM OPINION |
| CARA EILEEN FOX, f/k/a Cara Fox Fairbanks, | ) | AND JUDGMENT* |
| | ) | |
| | ) | No. 2100 – August 13, 2025 |
| Appellee. | ) | |
| | ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Anchorage, Josie Garton, Judge.

Appearances: Trevor Paul Fairbanks, pro se, Anchorage, Appellant. Notice of nonparticipation filed by Kara A. Nyquist, Nyquist Law Group, Anchorage, for Appellee.

Before: Carney, Borghesan, Henderson, and Pate, Justices. [Maassen, Chief Justice, not participating.]

## I.    INTRODUCTION

During divorce proceedings, a man sought credit for contributions of his separate property to the marital home. He testified he used savings and life insurance accounts identified as separate property in the couple's prenuptial agreement to help pay for the home's construction, and he argued that he should be reimbursed for those

---

\*      Entered under Alaska Appellate Rule 214.

expenditures. His ex-wife testified that her separate property and marital property had also been used to pay for the home's construction. The superior court determined that the home was marital and awarded its value to the man in the distribution of the marital estate.

The man appealed, arguing the superior court erred by finding the home was marital and declining to credit him for his contributions of separate property. We remanded to the superior court with instructions to reconsider its conclusion that there was "insufficient evidence" to credit him for these contributions. On remand, the case was reassigned to a different judge. Following additional briefing, the court issued a new order again finding the entire value of the home was marital and declining to credit the man's contribution of premarital funds.

The man appeals once more and again argues that the superior court erred by classifying the portion of the home's value he says is the result of his contributions of separate property as marital and by declining to award him a credit for those contributions. Because the man failed to demonstrate that his contributions went toward the home's construction, we affirm the superior court.

## II. FACTS AND PROCEEDINGS

### A. Facts

This is the second time we have reviewed the division of Fairbanks and Fox's marital estate.[1] The couple divorced in 2019. They executed a prenuptial agreement that listed each of their assets coming into the marriage and established that those assets would remain each party's separate property in the event of a divorce.

The agreement also provided that any "increase in value, appreciation or gain during the marriage of any property owned" by the parties before executing the agreement would be deemed shared property. Finally, it provided that commingled

---

[1] *See Fairbanks v. Fox*, No. S-17994, 2022 WL 3443662 (Alaska Aug. 17, 2022). A more detailed description of the facts can be found there.

property, including commingled separate property and separate property commingled with shared property, would remain separate property.

The parties testified to the value of their marital home during a 2020 trial. Fox testified that she contributed equity from her premarital home as well as some of her income to the home's construction costs. She also testified that she contributed her labor to the construction and paid "most" of the property taxes. She submitted financial records to support her testimony.

Fairbanks testified that he had contributed the proceeds of two life insurance accounts and savings accounts listed in the prenuptial agreement to the home's construction, as well as other funds. He testified that he and Fox split the cost of the home's property taxes and maintenance. He submitted exhibits showing the value of the accounts in the agreement and their value around the time the parties married.

When asked about Fairbanks's contributions to the home, Fox stated that her "guess would be that [Fairbanks] used [separate premarital funds] toward the building of our marital home." She stated that if she "had to ballpark it" she thought they spent between $250,000 and $300,000 on construction, but that she was not sure exactly how much he contributed to those costs because she did not have records to show how the funds were used.

Fairbanks agreed that Fox contributed some labor to the construction, but disagreed that her contribution was "significant." He claimed to be unaware that Fox had refinanced her premarital home and used some of its equity to help with construction costs. He testified that they had intentionally kept their finances separate, and he "never really had" access to Fox's financial records.

## B. Proceedings

### 1. First appeal

The superior court entered its findings of fact and conclusions of law in December 2020.[2]  It declined to credit Fairbanks for premarital funds spent on the home's construction, finding "insufficient evidence for the Court to conclude that such funds were spent for the construction of the home or improvement of the lot."  The court concluded a 50/50 division of the marital estate was equitable.  It awarded the marital home to Fairbanks and Fox's premarital home to her.  It also ordered Fairbanks to make an equalization payment of $235,099 to Fox.

Fairbanks appealed.[3]  He argued that the superior court erred by declining to credit him for his contributions of separate property to the marital home's value.[4]  We reversed the property distribution order and remanded for the court to reconsider Fairbanks's contribution of his separate assets to the home.[5]  We held that the superior court's statement that there was "insufficient evidence" to support Fairbanks's claim about his contribution of separate assets was "inadequate for purposes of our review."[6]  And we directed the superior court to "more fully explain how it weighed the evidence if it again concludes that it is insufficient to support [Fairbanks's] claim that he contributed a substantial amount of his premarital funds to the construction."[7]

---

   **2**    It later granted motions to reconsider from both parties, and amended the value of the checking accounts awarded to each party and Fairbanks's equalization payment to Fox.

   **3**    Fairbanks represented himself while Fox continued to be represented by counsel.  *See Fairbanks*, 2022 WL 3443662, at *7 n.31.

   **4**    *Id*. at *1.  He also appealed on other grounds unrelated to this appeal.

   **5**    *Id*. at *1, 3.  Of the issues we remanded, only Fairbanks's separate property contributions to the marital home is at issue in this appeal.

   **6**    *Id*. at *4.

   **7**    *Id*.

### 2. Remand proceedings

Following our remand, the previously assigned judge recused herself for reasons unrelated to this appeal. Fairbanks and Fox attempted mediation but were unable to resolve the property issues.

A different judge was assigned and ordered supplemental briefing on the remanded issues.[8] In his brief Fairbanks argued that he was entitled to credit for his contributions of premarital property to the marital home's value because the prenuptial agreement expressly identified his savings and life insurance accounts as separate property. He argued that his testimony and his exhibits showing the value of the accounts when he and Fox married demonstrated that he used the money from those accounts on construction-related costs. He stated that there was no evidence that he spent the money "on anything other than the home." And he argued that Fox's testimony to the contrary was not credible.

Fox argued the superior court had correctly found there was insufficient evidence that Fairbanks spent all the funds in his premarital accounts on the marital home's construction. She argued that the record supported its finding, even though the court had not explained it. She asserted that the evidence at trial made clear that construction of the home had been funded from many sources. She argued that because there were a number of sources contributing to the cost of construction, it was Fairbanks's burden, as the party seeking to establish a portion of the home's value as separate property, to trace his separate funds to specific expenditures made on the home's construction.[9]

Fox argued that if a court was "unable to trace the sources, or unable to determine the ratio of marital to nonmarital funds, then the entire property is considered

---

[8] Fairbanks continued to represent himself, while Fox continued to be represented by counsel.

[9] *See Pasley v. Pasley*, 442 P.3d 738, 745 (Alaska 2019).

marital."[10] She said that Fairbanks was therefore required to provide proof of "specific transactions for building materials and the like, with detail sufficient to show the exact amount of money he spent from each account and the exact items it was spent on."[11] And because Fairbanks "did not provide any documentation showing what happened to that money during [the] eleven-year marriage," she argued that the superior court had correctly found the entire value of the home to be marital.

### 3.  Decision on remand

In June 2024 the superior court again determined that the entire value of the home was marital.  But unlike the previous decision, the court determined that the prenuptial agreement did not relieve Fairbanks of the burden to trace his premarital funds to expenditures paid toward the home's value.  It concluded that the agreement was internally inconsistent with regard to the treatment of certain items of separate and "shared" property.

The court therefore turned to our decision in *Pasley v. Pasley*[12] to conclude that it was Fairbanks's burden to trace his separate funds to expenditures made on the home's construction, and that the prenuptial agreement had not relieved him of that burden.  The court characterized the home as a mixed secondary asset derived from multiple primary assets:  "[Fairbanks's] contribution of premarital property, [Fox's] contribution of premarital property, the parties' marital contributions of [Fairbanks's] and [Fox's] labor, [Fox's] income earned during marriage, which was used to fund construction, maintenance, and property taxes, and the appreciation of all of these."

The court recognized that the party seeking to establish the asset as separate bears the burden of demonstrating "the character of each source feeding into

---

[10]  *Id*. at 745-46.

[11]  *Id*.

[12]  442 P.3d at 745.

the mixed asset and the amount of value each source contributed to the mixed whole."[13] And it determined that the testimony during trial demonstrated that "[w]hile the character of the sources feeding into the [marital] house is known, the amount of value each source contributed to the mixed whole is unknown."

The court compared Fairbanks's testimony that "pretty much all" of the construction costs were funded by his premarital savings accounts with Fox's statement that the costs were paid from multiple sources, including the equity from refinancing her separate home. The court noted inconsistencies in Fairbanks's testimony about how much Fox had contributed and the parties' disagreements about who paid other expenses related to the home. The court found that the conflicting testimony demonstrated that their finances were "largely separate" and that Fairbanks and Fox "were in the dark about how the other spent their money."

The court determined that Fairbanks had failed to meet his burden to trace his separate funds. It concluded that although he had produced statements showing the balance of his savings and life insurance accounts prior to the marriage, Fairbanks "did not present any documentation of withdrawals from those accounts or tie those withdrawals to expenditures on the construction of the house."[14] The court therefore characterized the entire value of the home, except the value of Fairbanks's separate land, as marital and declined to credit him for any contributions from his premarital accounts.

---

[13] *Id.*

[14] By contrast the court noted that Fox's testimony was supported by "Quicken records from 2007 to 2016, through which she tracked her expenses."

### 4. Current appeal

After the court denied his motion for reconsideration, Fairbanks again appeals, still representing himself.[15] He argues that the superior court again erred by refusing to credit his contributions to the marital home from his separate accounts.

## III. STANDARD OF REVIEW

"Division of marital property involves three steps: '(1) deciding what specific property is available for distribution, (2) finding the value of the property, and (3) dividing the property equitably.' "[16] "The first step — characterizing property as either marital or separate — 'may involve both legal and factual questions.' "[17] The parties' intent, actions, and contributions to the marital estate, including whether a party contributed separate assets to marital property, are factual findings which we review for clear error.[18]

"[C]lear error . . . exists 'only when we are left with a definite and firm conviction based on the entire record that a mistake has been made.' "[19] "[W]hether the trial court applied the correct legal rule . . . is a question of law that we review de novo using our independent judgment."[20]

---

[15] Fox is not participating in this appeal.

[16] *Thompson v. Thompson*, 454 P.3d 981, 988 (Alaska 2019) (quoting *Engstrom v. Engstrom*, 350 P.3d 766, 769 (Alaska 2015)).

[17] *Aubert v. Wilson*, 483 P.3d 179, 186 (Alaska 2021) (quoting *Pasley*, 442 P.3d at 744).

[18] *Id.* (quoting *Grove v. Grove*, 400 P.3d 109, 112 (Alaska 2017)).

[19] *Id.* (quoting *Pasley*, 442 P.3d at 744).

[20] *Id.* (alteration in original) (quoting *Grove*, 400 P.3d at 112).

## IV. DISCUSSION

### A. Legal Framework

"Alaska follows the law of equitable distribution, which is a set of rules for dividing property upon divorce."[21] Because "only marital property is subject to division upon divorce,"[22] division of the marital estate begins by "first distinguish[ing] between separate property and marital property."[23]

A valid and enforceable prenuptial agreement can be persuasive evidence of how the parties intended an asset to be characterized in the event of a divorce.[24] However, the existence of such an agreement may not resolve all questions about the parties' intent, and courts are not prohibited from considering other factors, such as the "parties' treatment of the property during marriage."[25]

When characterizing assets, we distinguish between primary and secondary assets, which can be separate or marital.[26] "Assets acquired during marriage 'as compensation for marital services' — most commonly salaries earned by either spouse during the marriage — are considered primary marital assets."[27] "Assets acquired by one spouse before marriage, property acquired by gift, and property

---

[21]   *Id*. (quoting *Kessler v. Kessler*, 411 P.3d 616, 618 (Alaska 2018)).

[22]   *Id*. (quoting *Kessler*, 411 P.3d at 618).

[23]   *Id*.

[24]   *See Compton v. Compton*, 902 P.2d 805, 809 (Alaska 1995) (holding that provision of prenuptial agreement should be considered persuasive evidence of parties' intent); *see also Brooks v. Brooks*, 733 P.2d 1044, 1048-50 (Alaska 1987) (discussing parties' intent when evaluating "fairness" of prenuptial agreements).

[25]   *Compton*, 902 P.2d at 809.

[26]   *See Pasley*, 442 P.3d at 745.

[27]   *Id*. (quoting *Schmitz v. Schmitz*, 88 P.3d 1116, 1127 (Alaska 2004)).

acquired by inheritance are primary separate assets."[28] By contrast, "assets acquired through exchange, appreciation, or income are secondary assets."[29]

We have previously recognized that:

When a party uses separate property to acquire property during a marriage, the acquired property is treated as marital property if the trial court determines that the owner of the separate property intends that the newly acquired property be marital or if circumstances indicate that the other spouse has made significant contributions with respect to the property.[30]

Secondary assets are classified through tracing, which involves identifying its source asset.[31] "If a source asset is primary marital property, then the secondary asset is secondary marital property, while a source asset that is a primary separate asset yields a secondary separate asset."[32] However, we have also observed that a secondary asset may have multiple source assets.[33]

When a secondary asset is the result of multiple primary assets, it is considered a mixed secondary asset.[34] Classification of a mixed secondary asset requires a court to determine both "the character of each source feeding into the mixed asset and the amount of value each source contributed to the mixed whole."[35] After a court has identified each source asset, it can then determine the ratio between marital

---

[28]   *Id.*

[29]   *Id.*

[30]   *Compton*, 902 P.2d at 809.

[31]   *Pasley*, 442 P.3d at 745.

[32]   *Id.*

[33]   *Id.*

[34]   *Id.*

[35]   *Id.* (quoting *Schmitz*, 88 P.3d at 1127).

and separate source assets which is "ordinarily . . . the same ratio as the marital and separate contributions used to acquire the asset."[36]

Untraceable assets are considered marital property.[37] We have also recognized that "an asset is marital even if its *sources* are known but the *ratio* of marital to separate property in the source is unknown."[38] "In such a case, the unknown contribution from the separate source is said to transmute by commingling to become marital property."[39] And when tracing the source of a secondary asset, "the party seeking to establish the asset as separate bears the burden of proof."[40]

Whether a party has adequately linked a secondary asset to its source assets is a "question of fact best left to the superior court."[41] We review factual findings for clear error, which exists "only when we are left with a definite and firm conviction based on the entire record that a mistake has been made."[42]

## B. The Superior Court Did Not Err By Characterizing The Home As Marital Property.

### 1. The prenuptial agreement is not dispositive.

Fairbanks argues that the parties' prenuptial agreement establishes that he is entitled to credit for his contributions to the marital home. He argues that the agreement supports characterizing the portion of the home's value associated with his investment of separate funds as also separate. But, as the superior court found, the

---

[36]    *Id.*

[37]    *Pasley*, 442 P.3d at 745.

[38]    *Id.* at 745-46 (emphasis in original).

[39]    *Id.* at 746.

[40]    *Id.* at 745.

[41]    *Id.* at 747.

[42]    *Aubert v. Wilson*, 483 P.3d 179, 186 (Alaska 2021) (quoting *Pasley*, 442 P.3d at 744) (internal quotations omitted).

prenuptial agreement does not resolve whether the full value of the home is marital property.

Fairbanks relies on a provision in the agreement that provides "[t]he Parties' marital residence and any additional homes" will be treated as separate property in the event of a divorce. He also cites other language stating that "[a]ny commingled property, including the commingled Separate Property of each Party, or any Separate Property that is commingled with Shared Property" will remain separate property. He argues that because the agreement expressly identifies his savings and life insurance accounts as his separate property, and because he testified those accounts were later invested in the construction of the home, the value of the home associated with that investment should remain his separate property.

But the agreement also provides that any "increase in value, appreciation or gain during the marriage of any property owned by either Party before the execution of this Agreement" will be treated as marital property. While the agreement identifies the marital home's lot as Fairbanks's separate property, its value increased during the marriage when the home was built on it. The language in the prenuptial agreement could therefore be understood to characterize the home's value as either separate or marital. We agree with the superior court that the prenuptial agreement does not resolve this issue.[43]

### 2. Characterization of the home and the funds used to construct it is controlled by *Pasley v. Pasley.*

Because the prenuptial agreement does not control the characterization of the funds Fairbanks contributed to the marital home, he must trace the use of those funds to prove that they remain his separate property.[44] We agree with the superior court that the marital home is a mixed secondary asset because it is the product of

---

[43]    *See Compton v. Compton*, 902 P.2d 805, 809 n.4 (Alaska 1995).

[44]    *Pasley*, 442 P.3d at 745.

multiple source assets.[45]  The court found that the home was funded by "[Fairbanks's] contribution of premarital property, [Fox's] contribution of premarital property, the parties' marital contributions of [Fairbanks's] and [Fox's] labor, [Fox's] income earned during the marriage, which was used to fund construction, maintenance, and property taxes, and the appreciation of all of these."

This finding is supported by the evidence.  Fox testified that she contributed her separate property, income, and labor to the home's construction.  She also stated that she covered "most" of the property taxes.  Fairbanks, on the other hand, testified that he used the two life insurance accounts and three savings accounts he maintained prior to the marriage to pay for the home's construction.  He said that he and Fox split the cost of the home's property taxes, and they both contributed to its ongoing maintenance.

The superior court found that the testimony identified the sources that contributed to the home.  But it also found that Fairbanks's and Fox's testimony often conflicted and demonstrated disagreement about the amount each source contributed to the home's overall value.

To classify a mixed secondary asset like the marital home, the court first had to determine the character of each asset that contributed to it,[46] which it did.  It then had to determine which portion of the mixed secondary asset's value resulted from separate property and which was marital.[47]  But without the ability to trace the contributions to the mixed secondary asset or to link them to a primary source, the court was required to characterize the mixed secondary asset as marital — even though "its sources are known" because "the ratio of marital to separate property . . . is unknown."[48]

---

[45]     *Id.*

[46]     *Id.*

[47]     *Id.*

[48]     *Id.* at 746.

As the party seeking to establish part of the home's value as separate, Fairbanks bore the burden to trace each of his separate assets to its contribution to the marital home.[49] He relies on the prenuptial agreement's language and account statements dating from 2008 as well as his testimony to demonstrate that he made those contributions. But although Fairbanks documented the value of his separate accounts before the home was built, he did not provide receipts or records of any kind showing how he used those funds.

Whether testimony alone sufficiently traces a mixed secondary asset to its source assets remains "a question of fact best left to the superior court."[50] When a party relies solely on testimony to fulfill their tracing burden, a "court should generally ask three questions. First, with what degree of specificity would the party ordinarily be expected to remember such a transaction? What documentation of such a transaction would ordinarily be available to the party attempting to prove its existence? Finally, is the testimony neutral or self-serving?"[51]

The superior court found that Fairbanks's testimony was "based on his memory" of how the couple financed the home's construction because he "did not present any documentation of withdrawals from [his] accounts or tie those withdrawals to expenditures on the construction of the house." And it found that "[b]y contrast, [Fox's] . . . was based on Quicken records from 2007 to 2016, through which she tracked her expenses."

---

[49] *Id*. at 747.

[50] *Id*.

[51] *Id*.

While Fairbanks could not be expected to remember the details of every construction-related expenditure he made since 2008,[52] it is not unreasonable to expect that he would have some records, such as account statements showing withdrawals or receipts for building materials, to support his testimony. He failed to produce any.[53]

The record supports the court's conclusion that Fairbanks failed to meet his tracing burden. The court did not err by treating the home as an untraceable mixed secondary asset, classifying it as marital, and declining to credit Fairbanks for his contributions of separate property.

## V.    CONCLUSION

We AFFIRM the superior court's judgment.

---

[52]    *See id.* ("[P]recise requirements for non-marital asset tracing may be appropriate for skilled business persons who maintain comprehensive records of their financial affairs, [but] such may not be appropriate for persons of lesser business skills or persons who are imprecise in their record-keeping abilities." (quoting 1 BRETT R. TURNER, EQUITABLE DISTRIBUTION OF PROPERTY § 5:59 at 610 (3d ed. Nov. 2017 update))).

[53]    We note that Fairbanks attached for the first time a document which appeared to show construction-related expenditures to his June 27 motion for reconsideration. However, a motion for reconsideration may not "be used as a means to seek an extension of time for the presentation of additional evidence on the merits of the claim." *See Neal & Co., Inc. v. Ass'n of Vill. Council Presidents Reg'l Hous. Auth.*, 895 P.2d 497, 506-07 (Alaska 1995) ("We refuse to allow a motion for reconsideration to be used as a means to seek an extension of time for the presentation of additional evidence on the merits of the claim. To do so would defeat the limited purpose of Rule 77(k): to remedy mistakes in judicial decision-making where grounds exist, while recognizing the need for a fair and efficient administration of justice.").